**UNITED STATES of America,
Appellee,**

v.

**Abe GIDDINS and Interstate Dress Carriers, Inc., Defendants-Appellants.**

**No. 146, Docket 25633.**

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1959.

Decided Jan. 18, 1960.

**844**

Solomon A. Klein, Brooklyn, N. Y. (Louis Bender, New York City, on the brief), for defendants-appellants.

Donald H. Shaw, Asst. U. S. Atty., S. D. N. Y., New York City (S. Hazard Gillespie, Jr., U. S. Atty., and George I. Gordon and David Klingsberg, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before CLARK, WATERMAN, and MOORE, Circuit Judges.

CLARK, Circuit Judge.

These are appeals by Interstate Dress Carriers, Inc., and its president, Abe Giddins, from convictions after trial by jury of subornation of perjury in violation of 18 U.S.C. § 1622. The perjury was committed by Edward Kornfeld at a hearing conducted by the Interstate Commerce Commission on the corporation's application to extend its trucking operations between New York and certain southern states. Kornfeld testified that he was the production and shipping manager of Gerson & Gerson, Inc., that the company had a sewing factory in Virginia, and that it would utilize Interstate's transportation services if the certificate were granted. In fact, Kornfeld had no connection with Gerson & Gerson, but was associated with Petite Frocks, Inc., which company had no need for the transportation services involved. Kornfeld had no interest in Interstate, but he was related to Giddins through marriage and the two were frequent social companions.

The only direct testimony as to subornation was that of Kornfeld. Giddins admitted that he had requested Kornfeld to testify, but denied that he had induced or had known of the false statements. The resolution of this conflict depended upon an assessment of credibility—a matter clearly within the province of the jury. It is unnecessary to decide whether Kornfeld's testimony was corroborated, since we see no reason to depart from the rule that the element of subornation, as distinguished from the element of perjury, is not subject to the requirement of corroboration. Cohen v. United States, 2 Cir., 27 F.2d 713; Doan v. United States, 9 Cir., 202 F.2d 674. No question is raised as to the sufficiency of the quantum of proof on the element of perjury.

The principal assignments of error relate to questions posed by the gov-

ernment on the cross-examination of defendants' witnesses. The first character witness, Justice DiGiovanna of the New York Supreme Court, testified that he had known Giddins since 1940 and that the defendant had an excellent reputation in the community for truthfulness and honesty. On cross-examination the following question was allowed over vigorous objection:

"Have you heard that the defendant Abe Giddins, the individual as to whom you have just testified, is the business partner of Harry Strasser, a convicted dope peddler, and the former business partner of the late Albert Anastasia?"

The response was negative.

■■ Inquiry directed to a character witness' knowledge of disparaging rumors concerning an accused is almost universally permitted. 3 Wigmore on Evidence § 988 (3d Ed. 1940). Such questions are relevant to test the familiarity of the witness with the reputation in question. Further, the defendant by voluntarily adducing evidence of his good reputation is foreclosed from objecting to evidence suggestive of the contrary. The practice has been cogently criticized, however, on the ground of the jury's inability to limit its consideration of such evidence to the issue of reputation. Ibid. This problem is aggravated where, as here, the answer is negative, and thus the inquiry is without probative significance unless others testify to the existence of such rumor or unless the witness' demeanor suggests that his denial is fabricated. But the assumption that a jury, even though instructed as to the immateriality of the exchange, will properly ignore it is doubtless based on unreality.

This consideration led Judge Frank in United States v. Michelson, 2 Cir., 165 F.2d 732, to recommend that the Supreme Court consider limiting the permissible scope of cross-examination of character witnesses. On certiorari the Court in Michelson v. United States, 335 U.S. 469, 486, 69 S.Ct. 213, 223, 93 L.Ed.

168, agreed "that much of this law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other." But it was recognized that "[b]oth propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record." 335 U.S. at page 480, 69 S.Ct. at page 221. Thus the best practical solution was to be found in investing the trial court with wide discretion to control cross-examination. These rulings were to be disturbed by a Court of Appeals only "on clear showing of prejudicial abuse of discretion."

The Court did, however, provide protection from unwarranted innuendoes by requiring the trial judge to ascertain, out of presence of the jury, whether "the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation." 335 U.S. at page 481, 69 S.Ct. at page 221. While the irrelevancy of this inquiry into the actual occurrence of the event was recognized, it was considered to be pragmatically justified. Here this procedure was followed by the trial court. Government counsel assured the court that FBI reports had revealed a business partnership of Giddins, Strasser, and Anastasia in a dress-contracting establishment. Counsel also remarked that the relationship had been the subject of comment in a newspaper story. With this showing of good faith by the government the allowance of the question cannot be deemed a prejudicial abuse of discretion. See United States v. Alker, 3 Cir., 260 F.2d 135, 149, certiorari denied Alker v. United States, 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571; Segal v. United States, 8 Cir., 246 F.2d 814, 820, certiorari denied 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192. While the wording of the question taken by itself might suggest an inference that the reference was to a partnership in illegal endeavors, this was dispelled by the tenor of related ques-

tions and answers on direct and cross-examination of the defendant.

■ In its charge at the end of the trial the court advised the jury as follows:

"In this connection the Government was permitted by me to ask one of the witnesses whether he had heard that the defendant was a partner of Anastasia and Strasser. The witness said that he never did. I permitted this because the witness testified concerning the defendant's reputation, and we all know that reputation is the sum total of what we hear about people, and that is why the question was relevant. But I must add that there was no evidence in this case that the defendant Abe Giddins was a partner of either of these two men, and certainly the mere asking of the question doesn't prove that he was.

"In fact, I charge you specifically that there was no evidence in the case connecting the defendant Abe Giddins with either of these two men in any partnership relationship whatsoever."

This instruction was a proper statement of the law. No cautionary instruction was requested at the time the question was posed, perhaps due to counsel's desire to avoid further emphasis on the matter. In the absence of such request, the instruction at the end of the trial sufficed. See Malatkofski v. United States, 1 Cir., 179 F.2d 905, 914.

■ Objection is also raised to the government's representation on cross-examination of Giddins that it was prepared to prove that he or someone else on the part of Interstate had committed a prior similar act of suborning another witness, Max Sawitz. Sawitz had testified at the ICC hearing in June 1953 that he was President of Colonial Fashions, Inc. When Giddins denied that this testimony was false, the government introduced a copy of a report by Colonial to the Virginia Corporation Commission which indicated that Giddins was its president from November 1952 to November 1953. The admission and refusal to strike this exhibit is objected to on the ground that it constituted impeachment on a collateral matter.

The defense was permitted, however, to reopen its case and demonstrate via corporate minutes, the corporate lease, payroll checks, and promissory notes that the report was erroneous, Giddins having been elected president of Colonial upon the resignation of Sawitz in September 1953. Any remaining doubts in the jury's mind would have been dispelled by the following instruction: "When the defendant Giddins was on the stand an issue developed on cross-examination as to whether or not Sawitz testified truthfully or falsely before the ICC examiner when he testified that he was president of Colonial Dress Company. The Government was permitted to go into this collateral issue on its representation that it intended to prove that the defendant Giddins suborned Sawitz's testimony and that it was false. The Government utterly failed in this connection and offered no testimony or no proof that the defendant Giddins had anything to do with Sawitz's testimony, or that he knew that he lied, if in fact he did. All of the testimony relative to that issue should be disregarded by you, since the Government completely failed in its intended proof." Thus the error, if any, in the pursuance of this inquiry can only be deemed harmless. Fed.R.Crim.P. 52; cf. United States v. Novick, 2 Cir., 124 F.2d 107, 109, certiorari denied Novick v. United States, 315 U.S. 813, 62 S.Ct. 795, 86 L.Ed. 1212.

■ The remaining issue involves defendants' contention that sentence should have been imposed under § 222(a) or (c) of the Motor Carrier Act of 1935, 49 U.S. C. § 322(a, c), rather than under 18 U.S. C. § 1622. Giddins was sentenced to imprisonment for a year and a day, and Interstate was fined $2,000. The maximum penalty under 49 U.S.C. § 322(a) at

that time was a fine of $100, and under 49 U.S.C. § 322(c) a fine of $500.[1]

18 U.S.C. § 1622 provides in unambiguous language:

"Whoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined not more than $2,000 or imprisoned not more than five years, or both."

The assertion that this provision is inapplicable is grounded on the fact that the maximum punishment for perjury under 18 U.S.C. § 1621 is a fine of $2,000 and five years' imprisonment, "except as otherwise expressly provided by law." It is argued that perjury and subornation are substantially the same offense, and thus the savings clause of 18 U.S.C. § 1621 should be read into § 1622. Cf. Epstein v. United States, 7 Cir., 196 F. 354. Prior to the 1948 revision of the Criminal Code, the punishment for subornation was prescribed to be that imposed for perjury. The Reviser's Note to 18 U.S.C. § 1622 merely states that "[t]he punishment prescribed in section 1621 of this title was substituted for the reference thereto."

But it is unnecessary to decide this point, since we find no Congressional intent that the general prohibitions of 49 U.S.C. § 322, dealing as they do with motor carrier regulation by the ICC and making no reference to perjury or subornation thereof, should supplant the specific proscription of perjury in 18 U.S.C. § 1621. The prohibition of 49 U.S.C. § 322(c) against seeking by any means "to evade or defeat regulation as in this chapter provided" is in marked contrast to the specific reference to perjury found in other sections of the United States Code.[2] Further, in reference to a recent amendment to § 322, Congress noted that subsection (a) relates "to vio-

lations of motor carrier safety regulations," and subsection (c) "to rebates and unlawful competitive practices." H. R. Rep. No. 877, 85th Cong., 1st Sess., 1957 U.S.Code Cong. & Adm. News 1467–68. We thus conclude that sentencing under 18 U.S.C. § 1622 was proper.

Judgment affirmed.

---

1. By amendment of Aug. 14, 1957, to 49 U.S.C. § 322(a) and (c) the penalties under (a) have been increased to $100–500 for a first offense and $200–500 for subsequent offenses, while the penalties under (c) have been increased to $200–500 for a first offense and $250–2,000 for subsequent offenses.

2. E. g., 5 U.S.C. § 789; 13 U.S.C. § 213; 26 U.S.C. §§ 6065, 7206; 38 U.S.C. § 787; 46 U.S.C. §§ 170(13), 231. See also 16 U.S.C. § 371; 22 U.S.C. § 703; 46 U.S.C. § 22.