**Everett W. GROSS and L. Mary Gross,**
**Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18818.**

United States Court of Appeals
Eighth Circuit.

May 6, 1968.

A. E. Sheridan, Waukon, Iowa, for appellants.

Stephen M. Turner, U. S. Atty. for the Northern District of Iowa, Sioux City, Iowa, and Donald E. O'Brien, Special Asst. U. S. Atty., for appellee; Patrick J. Foley, U. S. Atty. for the District of Minnesota, Minneapolis, Minn., on the brief.

Before VOGEL, Senior Circuit Judge, and BLACKMUN and LAY, Circuit Judges.

VOGEL, Senior Circuit Judge.

Everett W. Gross and L. Mary Gross, husband and wife, defendants and appellants herein, appeal from a denial of their pre-trial motions: To dismiss the 20-count indictment returned against them by a grand jury; to produce certain records for inspection, including grand jury proceedings; to provide a bill of particulars; and to suppress certain evidence. These motions were all denied by order of the trial court dated February 13, 1967. Appellants also appeal from a judgment of conviction entered March 29, 1967, which judgment was entered upon a jury verdict of guilty on all 20 counts returned February 18, 1967. Finally, appellants appeal from an order denying their motions for acquittal and for a new trial entered March 6, 1967.

The 20-count indictment, returned on December 6, 1966, charged that the appellants violated 18 U.S.C.A. § 1341 (using the mails to defraud or obtain money under false pretenses) and § 1343 (using wire, radio or television). Each of the counts related to specific transactions in a check kiting scheme which appellants allegedly operated over a 15-month period in 1962 and 1963 between Decorah, Iowa and La Crosse, Wisconsin.

Appellants have urged 26 separate assignments of error, many of them repetitious. We have examined all of them and find that none rises to the status of reversible error excepting only one based upon the government's cross-examination of appellants' character witnesses. Since we conclude that a new trial must be granted, we limit our discussion herein to the point requiring reversal.

The facts, taken from the record and dealing with the cross-examination by the government of the appellants' character witnesses, may be briefly stated as follows:

During the trial appellants called two witnesses to testify as to appellants' reputations in Helena, Montana, where appellant Everett W. Gross had moved in September 1962. (Mrs. Gross joined her husband in Helena at a later time.) Witness Stokes testified as to the character and reputation of both appellants in Helena, Montana, stating that:

"Other than a—Discounting this latest business that is under consideration here, I would say [their reputation] is good."

On cross-examination witness Stokes was asked:

"Have you heard, sir, that on September 24, 1957, a law suit was filed in Federal Court against Everett Gross and others wherein it was stated that the Charles City Bank had fraudulently lost $11,988.87 because bank money orders had been purchased by insufficient fund checks signed by Everett Gross?"

Appellants' counsel immediately objected that this was improper cross-examination, that the question called for incompetent, irrelevant and immaterial testimony, and that it was highly prejudicial to appellants. The objection was overruled and the witness answered:

"I was not aware of it, no."

The United States Attorney then asked the witness:

"Had you heard that a few days later on October 17, 1957, Federal Judge Henry Graven found that the statements just mentioned about Everett Gross were in fact true and that the Judge entered a judgment against Everett Gross for $11,988.87?"

Appellants' counsel raised the same objection to this question which was again overruled and the witness answered:

"No, I never heard that.

"By Mr. O'Brien:

"Q. You haven't taken those into consideration; is that right?

"A. I knew nothing about it.

"Q. Would that in any way affect your opinion as to the truth and veracity that you have told us about?

"A. I would want to consider it a little bit further."

Appellants' counsel made no request for the court to immediately admonish or instruct the jury concerning the purpose and limited effect of the cross-examination and none was given.

Witness Erickson testified concerning the reputation of appellant Everett W. Gross in the Helena, Montana, vicinity and stated that Gross' reputation there was "very good". Erickson had known Mrs. Gross since June of 1964 and on cross-examination he stated that he would have included Mrs. Gross in his summarization as to having a good reputation had he been asked about her. Erickson was then cross-examined:

"Have you heard, Mr. Erickson, that Mr. Gross filed a petition in bankruptcy in 1958, and listed creditor claims against himself totalling $77,-873.35 and that a portion of this amount was for unhonored checks by Mr. Gross? Had you heard that?"

No objection was taken by appellants to the question and the witness answered, "No." Erickson was then asked:

"And have you heard that none of these people were paid? Have you heard that?"

Appellants' counsel objected to this question as being incompetent, irrelevant and especially immaterial as to time. The objection was overruled but Erickson

gave no answer to the question. Erickson was then asked:

"Have you heard, Mr. Erickson, that on October 31, 1960, Robert L. Larson, Chief Justice of the Iowa Supreme Court, issued an order, an injunction, prohibiting Everett W. Gross from practicing law in the State of Iowa? Had you heard that?"

No objection was made to the question and the witness answered, "No." Erickson testified further:

"Q. Now, if you had heard both of these matters would you have taken them into consideration in determining your statement as to reputation?

"A. I don't think so. I wouldn't judge a man by what he has done in the past by what—as much as what he does today. Just like Jesus judged the woman caught in adultery.

"Q. As far as you know in 1964, from that time on, when you saw him not more than once a month; is that right?

"A. Sometimes I saw him oftener because he came down and done work for me both in Billings and Montanan."

In addition to the objections made to the cross-examination of the witnesses Stokes and Erickson, appellants' counsel made a motion to strike the same at the close of all the evidence, which motion was overruled.

The court gave no instructions regarding such cross-examination and its relevancy or the very limited purpose for which the jury might consider it. The court also made no effort, outside the presence of the jury, to ascertain whether there was a basis in truth for the questions propounded on cross-examination, carrying as they did serious suggestions of other misdeeds. The prosecution also failed to offer to establish to the satisfaction of the trial court that such questions were in good faith. We consider here the question of whether prejudicial error was thus committed.

■■ When a defendant places his reputation in issue by the introduction of what are loosely described as "character" witnesses, he opens the way for the prosecution to test the credibility of such witnesses by making inquiry on cross-examination as to whether the witness had knowledge of specific facts which, if known generally, would have a tendency to detract from the summary of reputation testified to by the character witnesses. The exercise of the right to test the credibility of character witnesses by such means is fraught with great danger. Unless circumscribed by rules of fairness and grounded in demonstrated good faith on the part of the prosecution, the result could be most prejudicial to the defendant and make for a miscarriage of justice. See, generally, Conrad, Modern Trial Evidence, § 205 (1956); Anno. 47 A.L.R.2d 1262.

■ Generally, in a criminal case, the defendant may introduce evidence of his good reputation relating to the time and place of the act or acts charged and before. See, Am.Jur.2d, Evidence, § 348; Underhill, Criminal Evidence, § 198 (5th Ed.).

"Inquiry as to the reputation of the person involved must relate in criminal cases to that existing at the time of the crime, and a reasonable anterior time through which such reputation continues, not too remote from the date of the crime.

"Reputation subsequent to the time of the commission of the crime is incompetent." Conrad, Modern Trial Evidence, § 200.

A careful reading of the record here discloses that the reputation testimony offered by defense witnesses Stokes and Erickson related to a different place than that of the offense and went to establish appellants' reputation at that place at a time subsequent to the commission of the allegedly criminal acts. The prosecution chose not to challenge the testimony on such grounds, however, and instead cross-examined with reference to a different time (before) and a different place (Iowa instead of Montana).

The right to introduce, through character witnesses, what the defendant's reputation was at the time of the crime alleged may be an extremely important right. In some circumstances the defendant's reputation alone may be sufficient to raise a reasonable doubt as to his guilt and the jury may be so instructed. Michelson v. United States, 1948, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168. It must be borne in mind, and the jury must be carefully cautioned to the effect, that we are dealing solely with reputation, not with reference to the truth of collateral facts which may be mere rumors but which may tend to make up the reputation with which we are concerned.

In Michelson v. United States, supra, the Supreme Court carefully considered the manner and extent of cross-examination of character witnesses in criminal cases. The court there stated, 335 U.S. at pages 480–481, 69 S.Ct. at page 221:

"* * * Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject."

We determine this case to be one of those rare circumstances where prejudicial abuse of discretion has been clearly established.

In *Michelson*, supra, the Supreme Court also stated, at 335 U.S. 480, 69 S.Ct. 221, that:

"Wide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse. The trial judge was scrupulous to so guard it in the case before us. He took pains to ascertain, out of the presence of the jury, that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation. He satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box."

No such precautions were taken by the trial judge in this case either prior to or after the cross-examination. See, Goodman v. United States, 8 Cir., 1960, 273 F.2d 853, 859, where no error was found when the trial judge did not ascertain the truth of the basis for the question until after the question had been propounded and answered. The court there, however, correctly and carefully instructed the jury as to the limited use of such cross-examination, both then and at the close of the case. Here the record is barren of any showing supporting the basis for the cross-examination. The trial judge took no safeguards to prevent the prosecution from "* * * taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box." This failure was error. Travis v. United States, 10 Cir., 1957, 247 F.2d 130, 132, 136; United States v. Gosser, 6 Cir., 1964, 339 F.2d 102, 111–112.

There is a suggestion in some of the cases that a negative response by the character witness to the question propounded on cross-examination removes any prejudice from an otherwise improper question and is actually beneficial to the defendant. See, 47 A.L.R.2d 1312 and cases there cited; for example, Mannix v. United States, 4 Cir., 1944, 140 F.2d 250, 251. In the instant case the character witnesses gave negative responses to the questions. We believe the suggestion that the negative answer is beneficial to the defendant to be obviously wrong. The purpose of propounding the question in the first place is to test the knowledge and credibility of the witness. When he gives a negative answer to the question, with its imputation of truthfulness in view of the respected public official making the inquiry, the knowledge of the witness must certainly appear inadequate from the jury's point of view. It can hardly be

considered beneficial to the defendant for his witnesses to appear unknowledgeable. How the negative response removes the prejudice is not apparent. The negative response by a knowledgeable witness might be thought to suggest to the jury that the question contains no truth and hence removes any prejudice. We believe, however, that quite the opposite obtains. The negative response may actually be sought by the examiner to indicate that the witness is unknowledgeable and his credibility suspect so that the negative response heightens the truth imputed in the asking of the question by the respected public official. We are unable to agree that the negative response removes the prejudice. By far the greater weight of authority supports a finding of prejudicial error notwithstanding the negative response. United States v. Giddins, 2 Cir., 1960, 273 F.2d 843, 845, cert. denied, 362 U.S. 971, 80 S.Ct. 955, 4 L.Ed.2d 900. See, 47 A.L.R. 2d 1313 and cases there cited. United States v. Phillips, 7 Cir., 1954, 217 F.2d 435, 443, 444.[1]

Even assuming the negative response was beneficial to the defendants, we note that the prosecution, immediately upon receiving the negative response, committed further error by asking the witness hypothetically if such knowledge would have affected the witness' opinion.

 The question propounded is obviously irrelevant because we are not interested in the witnesses' opinions of the defendants' character; we are seeking only hearsay testimony of the community's opinion of the defendants' character and reputation, "the shadow his daily life has cast in his neighborhood." (Mr. Justice Jackson in *Michelson*, supra, 335 U.S. at 477, 69 S.Ct. at 219, and see, also, page 480, n. 17); United States v. Alker, 3 Cir., 1958, 260 F.2d 135, 149–150, cert. denied, 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571; Little v. United States, 8 Cir., 1937, 93 F.2d 401, 408, cert. denied, 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105, and cases cited therein.

The errors in not testing the basis for the cross-examination and in allowing the improper hypothetical inquiry were compounded by the failure of the trial court to provide any instruction to the jury concerning the cross-examination, either at the time of such inquiry or in its final charge. The Supreme Court, in affirming the conviction in *Michelson*, supra, pointed out at page 472 of 335 U.S., at page 217 of 69 S.Ct.:

"The judge also on three occasions warned the jury, in terms that are not criticized, of the limited purpose for which this evidence was received."

See, n. 17 and 18 at 480–481 of 335 U.S., 69 S.Ct. 213; see especially discussion of *Michelson* in Spencer v. State of Texas, 1967, 385 U.S. 554, 563, 87 S.Ct. 648, 17 L.Ed.2d 606; Goodman v. United

---

1. McCormick, Evidence (1954) § 158, pp. 336, 337:

"The rule permitting the cross-examiner to ask the character witness whether he 'has heard' of other particular crimes of accused involving the same trait is pregnant with possibilities of destructive prejudice. The mere asking by a respected official of such a question, however, answered, may well suggest to the jury that the imputation is true. The courts agree that propounding such a question in bad faith may be ground of reversal. But establishing such bad faith may be a hopeless task.

\* \* \* \* \*

"\* \* \* Yet the asserted dangers of the prevailing practice are real and a curb is needed. The trial judge, it is believed, should be required by rule, before permitting the prosecuting counsel to cross-examine the character-witness on rumors of misconduct of the accused, or upon arrest, charges or convictions, to request the prosecutor to give his professional statement to the judge (in the absence of the jury) that he has reasonable ground to believe, and does believe, that the crimes or misconduct, which are imputed by the rumors, or which are the subject of the arrest or charges, were actually committed by the accused, and that the judgments of conviction inquired about were actually pronounced."

States, supra, 8 Cir., 1960, 273 F.2d 853, 859, 860; United States v. Beno, 2 Cir., 1963, 324 F.2d 582, 588 ("* * * it is permissible to ask these witnesses whether they have 'heard' of rumors which could injuriously affect their evaluation, provided that the prosecution acts in the good faith belief that the incidents to which the questions allude actually occurred, and the jury is instructed as to the limited weight which such 'evidence' may be given."). See, also, United States v. Giddins, 2 Cir., 1960, 273 F. 2d 843, 846. ("No cautionary instruction was requested at the time the question was posed, perhaps due to counsel's desire to avoid further emphasis on the matter. In the absence of such request, the instruction at the end of the trial sufficed.")

■ The rule permitting the cross-examiner to ask the character witness whether he "has heard" of the particular crimes or acts which might indicate a bad reputation exists only for the limited purpose of impeaching the witness on the stand by testing his knowledge and credibility. Without the meticulous and careful guidance of the trial judge, however, the jury may well not understand the purpose at all. They may take the question and its reference to specific acts or crimes as bearing directly upon the character of the defendant and his propensity to commit crime. They may take as established the truth of the inferences contained in the questions. Such use would circumscribe directly the careful rule designed to prevent this highly prejudicial use of such evidence and "strike the accused under the cloak of impeachment of the witness". Shimon v. United States, 1965, 122 U.S.App. D.C. 152, 352 F.2d 449, 454; 3 Wigmore, Evidence § 988 (3rd Ed.). When such a result is combined with an imputation of truth in the question propounded by a respected public official, manifest unfairness is the result. As stated by Judge Burger in *Shimon*, supra, at 453–454 of 352 F.2d:

"* * * The danger lurking in this impeachment process is that in order to frame an intelligible question, the examiner's query often give details of *specific misconduct* affecting general reputation which would not otherwise be admissible. * * * The wide discretion vested in a trial judge carries with it a very heavy and difficult responsibility to control the use of both devices—the parade of partisans and their impeachment by reference to other rumored acts and events. He must be alert to prevent questions conveying to the jury by innuendo prejudicial matter in which the Defendant himself is the real target, * * * *the target of the impeachment of a reputation witness is the credibility of the witness, not the prior conduct of the Defendant.*" (Emphasis supplied.)

■ The cross-examination in this case plus the failure to ascertain, out of the presence of the jury, a legitimate base for the inquiry, and the failure to warn or instruct the jury was, we believe, clearly prejudicial. A case involving facts similar to those with which we here deal is United States v. Phillips, 7 Cir., 1954, 217 F.2d 435, 443–444. There the record disclosed no basis for the cross-examination and it also appeared that no instructions were given concerning the limited purpose of the cross-examination. The court held that the government had a duty to provide a proper instruction concerning the cross-examination and, (444 of 217 F.2d)

"* * * Upon its failure to do so, we think it was the duty of the court of its own volition to instruct the jury as to the purpose for which the cross-examination was permitted, as well as the extent to which it could be considered by the jury. * * *

* * * * * *

"In the instant case no such precautionary measures were taken. In

fact, there were no precautionary measures of any kind. For aught that is disclosed by the record, the jury was at liberty to consider the damaging implication inherent in the government's cross-examination for any and all purposes."

■ It is our conclusion that when the prosecution attempts to attack the credibility of the defendant's character witnesses by questions beginning "Have you heard this" or "Have you heard that", that there should be a prior showing, out of the hearing of the jury, establishing to the trial judge's satisfaction the truth of the basis for such inquiry and, further, cautionary and guiding instructions should be given, preferably both at the time of the inquiry and in the closing charge to the jury. See, Segal v. United States, 8 Cir., 1957, 246 F.2d 814, 820, 821, cert. denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192. Compare, Love v. United States, 8 Cir., 1967, 386 F.2d 260, 265–266, cert. denied, 36 L.W. 3358.

We think especially appropriate the conclusion in Awkard v. United States, 1965, 122 U.S.App.D.C. 165, 352 F.2d 641, 644:

"* * * The information elicited was highly prejudicial; the character witness' testimony was weak to begin with since it went to an earlier [here subsequent] period and a different community [here Montana instead of Iowa]; * * * and could be impeached further without reference to the prior arrests. Indeed, the prosecuting attorney could have had the character testimony stricken since it did not relate to defendant's reputation in the community in which she lived or worked at the time of the alleged crime. Lomax v. United States, supra, 37 App.D.C. 414 at 417–418. Under these circumstances, the trial judge abused his discretion in permitting cross-examination on defendant's prior arrests and conviction."

Reversed and remanded for a new trial.