UNITED STATES of America, Appellee,

v.

Ronald William HARVEY, Appellant.

No. 1335, Docket 76–1183.

United States Court of Appeals,
Second Circuit.

Argued Aug. 19, 1976.

Decided Nov. 24, 1976.

Anne M. Srebro, Buffalo, N. Y. (Latona, Worthington, Srebro & Nitternauer, Buffalo, N. Y., of counsel), for appellant.

Richard E. Mellenger, Asst. U. S. Atty., Buffalo, N. Y. (Richard J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y., of counsel), for appellee.

Before VAN GRAAFEILAND, Circuit Judge, and KELLEHER * and GAGLIARDI **, District Judges.

KELLEHER, District Judge:

Defendant appeals from a judgment of conviction after a jury trial in which a verdict of guilty was found as to each of the two counts of the indictment, the first charging the appellant with bank robbery and the second with bank larceny.

The sole question presented on appeal is whether the trial court committed reversible error in excluding evidence proffered by the defendant as to possible bias on the part of the government's chief identification witness. The question presented is of a type likely to occur with some frequency under the Federal Rules of Evidence, which are still rather new, and which at the time of the trial below had been in effect for approximately five months.

On the afternoon of April 22, 1975, the Main-High branch of the Marine Midland Bank-Western was robbed by a man dressed as a woman. Mrs. Florida Strickland, a teller at the bank, described the robber as a medium complexioned black male in his early twenties, 5'11" to 6' in height, 160 lbs., slender build with broad shoulders, five o'clock shadow and a prominent Adam's apple. According to Mrs. Strickland, the robber was wearing a straight-haired wig pulled back into a bun, a blue denim hat, which did not obstruct a full view of the robber's face, gold wire framed dark glasses, lipstick, rouge, a dark coat, and was carrying a 10" wide red print cloth shoulder bag.

Mrs. Strickland was not able to make a positive identification of the robber, and much of the evidence against appellant at the trial consisted of her description of the robber's personal features and bank surveillance photos which the jury was asked to compare to appellant. The sole identification witness at the trial was a Priscilla Martin who testified that on the afternoon of April 22, while passing by on a bus, she observed a man she identified as appellant walk down the steps of the Salvation Army and touch one of the two doors of the Main-High branch of the Marine Midland Bank. Mrs. Martin described the man as wearing red pants, a black coat, black platform shoes and a black floppy hat whose brim obstructed a view of his face from the nose up. She described his hair style as a frizzled bush, "an afro," but could not say whether it was a wig. Mrs. Martin stated that the man was not wearing glasses and that she could not recall lipstick but did remember seeing rouge.

Mrs. Martin first learned of the robbery of the Main-High branch on the six o'clock news the evening of the 22nd. A week and a half later, she telephoned the bank to find out the time of the bank robbery, but did not leave her name or reveal any information about the robbery. She eventually spoke about the robbery with the Federal Bureau of Investigation, which had learned of her involvement through a friend of Mrs. Martin's husband.

---

* Of the Central District of California, sitting by designation.

** Of the Southern District of New York, sitting by designation.

Mrs. Martin had been acquainted with appellant for a number of years. She testified that she knew the appellant for nineteen years and at one time had lived in the same house with him. On cross-examination, defense counsel questioned Mrs. Martin on whether she had ever had any trouble with appellant or ever had any arguments or disagreements with him, and specifically whether she ever accused appellant of fathering her child and then failing to support this child. Mrs. Martin denied these charges and further denied that appellant visited her in the hospital after birth of the child. Mrs. Martin also denied that she confided in appellant's mother, Mrs. Catherine Harvey, that appellant was the father of the child or that she stated that she would "take revenge" on appellant for not "owning up" to this child.

Following Mrs. Martin's testimony, appellant sought to introduce testimony of Mrs. Harvey which would have shown that Mrs. Harvey was a long-time acquaintance of Mrs. Martin, and that while Mrs. Harvey was on duty as a nurse in a Buffalo hospital, she encountered Mrs. Martin, who was there for treatment of a broken leg. Mrs. Harvey would have testified that during this encounter Mrs. Martin accused appellant of fathering her child and refusing to support it and that Mrs. Martin further explained that when her husband learned of this he beat her and broke her leg, necessitating the hospital treatment. The trial judge refused this proffer of testimony, considering it "collateral" and inadmissible under Federal Rule of Evidence 613(b). It is this ruling which appellant maintains was error and which requires our consideration.

■ The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely. See United States v. Haggett, 438 F.2d 396, 399 (2d Cir. 1971); United States v. Lester, 248 F.2d 329, 334 (2d Cir. 1957); United States v. Battaglia, 394 F.2d 304, 314 n. 7 (7th Cir. 1968). The law of evidence has long recognized that a cross-examiner is not required to "take the answer" of a witness concerning possible bias, but may proffer extrinsic evidence, including the testimony of other witnesses, to prove the facts showing a bias in favor of or against a party. McCormick, Evidence, § 41 (2d Ed. 1972). Special treatment is accorded evidence which is probative of a special motive to lie "for if believed it colors every bit of testimony given by the witness whose motives are bared." United States v. Blackwood, 456 F.2d 526, 530 (2d Cir. 1972). This Circuit follows the rule, applicable in a number of other Circuits, that a proper foundation must be laid before extrinsic evidence of bias may be introduced. See United States v. Kahn, 472 F.2d 272, 281–82 (2d Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973); United States v. Hayutin, 398 F.2d 944, 953 (2d Cir.), cert. denied, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968). Prior to the proffer of extrinsic evidence, a witness must be provided an opportunity to explain the circumstances suggesting bias. See United States v. Kahn, supra. Federal Rule of Evidence 613(b), which applies to extrinsic evidence of prior inconsistent statements, similarly requires that a witness be "afforded an opportunity to explain or deny" the prior inconsistent statement. Because the testimony of Mrs. Harvey would have impeached Mrs. Martin's credibility by bringing before the jury prior inconsistent statements as well as demonstrate a possible bias on Mrs. Martin's part, Rule 613(b), in effect at the time of trial, required that a proper foundation be laid by appellant's counsel. Rule 613(b), however, relaxes the traditional foundation requirement that a witness's attention on cross-examination be directed specifically to the time and place of the statement and the person to whom made. Cf. Advisory Comm. Notes, Fed.R. Evid. 613(b); McCormick, Evidence, § 37 n. 45. The Rule provides, as has this Court in prior decisions concerning extrinsic bias testimony, that the witness be provided an "opportunity to explain or deny a prior inconsistent statement." Fed.R.Evid. 613(b); see United States v. Kahn, supra at 281–82; United States v. Hayutin, supra at 953. In cross-examining Mrs. Martin, de-

fense counsel clearly asked her whether she had ever accused defendant of fathering her child, whether she had ever stated she would "take revenge" on the defendant and whether she had confided in Mrs. Harvey that defendant was the father of her child. To each of the questions, Mrs. Martin answered no. Thus, on at least three occasions, the witness was afforded an opportunity to explain or deny circumstances suggesting prejudice. Since Mrs. Harvey would have testified that all statements heard by her were made at the same identifiable time and identified place, the reference to Mrs. Harvey as the other party to the conversation should have obviated any surprise to the government as to the when and where of the proffered testimony. *Cf. Smith v. United States*, 283 F.2d 16, 20–21 (6th Cir. 1960). While defense counsel could have been more expansive in establishing his foundation, we find that it was sufficiently established.

■ Although the scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted as the trial court in its sound discretion deems proper, *United States v. Blackwood, supra* at 530, it is rarely proper to cut off completely a probative inquiry that bears on a feasible defense. *Cf. Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). "(A) defendant should be afforded the opportunity to present facts which, if believed, could lead to the conclusion that a witness who has testified against him either favored the prosecution or was hostile to the defendant. Evidence of all facts and circumstances which 'tend to show that a witness may shade his testimony for the purpose of helping to establish one side of a cause only,' should be received. . . . Although we are mindful that it is within the sound discretion of the trial judge to determine the extent to which he will receive independent evidence for the purpose of proving a witness' hostility, we do not believe that he may as was done below, exclude all such evidence for that purpose." *United States v. Haggett, supra* at 399–400 (citations omitted). Since Mrs. Martin was the sole identification witness

at the trial, we cannot say that her testimony was not critical to the government's case against appellant. With identity as a principal issue in the trial, appellant was denied an important opportunity to raise a reasonable doubt about his participation in the bank robbery by undermining the credibility of Mrs. Martin. Although Federal Rule of Evidence 403 vests trial courts with discretion to exclude evidence if its probative value is substantially outweighed by the danger of prejudice, confusion, or delay, the trial court apparently did not exclude Mrs. Harvey's testimony on the basis of this consideration. There is no indication in the record that Mrs. Harvey's testimony posed a realistic possibility of confusion or prejudice, *see United States v. Aloi*, 511 F.2d 585, 602 (2d Cir. 1975), or would have caused a significant delay in the proceedings. Indeed, given the importance of the bias testimony to the defense, whatever confusion or delay that may have resulted from its admission would have to have been overwhelming to satisfy Rule 403's balancing test.

■ We now must consider whether the trial court's error in refusing to admit the testimony of Mrs. Harvey was so prejudicial as to require reversal of appellant's conviction. The right to "place the witness in his proper setting and put the weight of his testimony and his credibility to a test" is an essential safeguard to a fair trial. *Alford v. United States, supra* at 692, 51 S.Ct. at 219. Exercise of this right is particularly crucial where the witness offers damaging identification testimony, for in the absence of independent contrary evidence, a defendant must rely upon impeachment of the witness's credibility. The record reveals that appellant's conviction rests on the testimony of Mrs. Strickland as to a description of the robber, bank surveillance photos which the jury had an opportunity to review and compare to appellant's appearance, and the identification of Mrs. Martin. We are not convinced that Mrs. Martin's testimony was an insignificant part of the case against appellant and therefore find that denial of the opportunity to raise a

reasonable doubt as to identification by showing possible bias was prejudicial to appellant's right to a fair trial.

Accordingly, we reverse appellant's conviction and remand for a new trial.