UNITED STATES of America

v.

Paul W. HIVELY.

Crim. No. 81–165–1.

United States District Court,
M. D. Pennsylvania.

June 9, 1982.

David Shipman,,Asst. U. S. Atty., Harrisburg, Pa., for U. S.

William C. Costopoulos, York, Pa., for Hively.

## MEMORANDUM

## INTRODUCTION

HERMAN, District Judge.

On September 24, 1981, an indictment was filed charging Paul W. Hively with six counts of causing the transportation in interstate commerce of stolen refrigerated trailers in violation of 18 U.S.C. §§ 2 & 2314, and with one count of conspiracy to commit these crimes in violation of 18 U.S.C. § 371. A jury trial commenced January 27, 1982. On February 4, 1982, the Defendant was convicted of the offenses charged. Defendant has filed a timely motion seeking a new trial, on the grounds, *inter alia,*[1] that the court erred in refusing to allow defense witness Stanley R. Gochenour to testify, and in permitting the government to cross-examine the Defendant's character witnesses as to whether they had heard certain rumors in the community. For the reasons set forth in the discussion that follows, we do not think that a new trial is warranted.

## DISCUSSION

### I. Defense Witness Gochenour

Defendant complains that the court committed reversible error, requiring a new

---

1. In his motion, Defendant cited the following additional reasons for granting a new trial:

   1. The verdict is contrary to the weight of the evidence.

   2. The verdict is not supported by substantial evidence.

   3. The verdict is contrary to the law.

Defendant offers no support for these contentions, and we find none in the record.

trial, by refusing to allow defense witness Stanley R. Gochenour to testify. Counsel for Defendant offered to call Mr. Gochenour, an investigator for the defense, to relate that on July 31, 1981, Gochenour attended a meeting with government witness Vincent DeMarco and defense counsel William Costopoulos, at which DeMarco allegedly said he would alter his testimony and "say whatever had to be said" for $1,500.00. DeMarco had previously denied making this statement on cross-examination. DeMarco explained that the figure $1,500.00 was mentioned, but it was done so in the course of a casual conversation about the fee an attorney wanted in order to represent DeMarco in his divorce.

■ Impeachment of a witness by means of extrinsic evidence of prior inconsistent statements is permissible only as to those matters that are not collateral, *i.e.,* matters which are relevant to issues in the case and which could be independently proven. *United States v. Blackwood,* 456 F.2d 526, 531 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972); 3A Wigmore on Evidence §§ 1020–23 (Chadbourn rev. 1970). Without question, the bias, corruption or interest of a witness is not a collateral matter, and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely. *United States v. James,* 609 F.2d 36, 46 (2d Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Frankenthal,* 582 F.2d 1102, 1106 (7th Cir. 1978); *United States v. Robinson,* 530 F.2d 1076, 1079 (D.C.Cir.1976).

■ Special treatment is accorded evidence which is probative of a motive to lie because "if believed it colors every bit of testimony given by the witness." *United States v. Harvey,* 547 F.2d 720, 722 (2d Cir. 1976); *United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). The opportunity to "place the witness in his proper setting and put the weight of his testimony and his credibility to a test" is an essential safeguard to a fair trial. *Harvey,* 547 F.2d at 723, *quoting, Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). The Supreme Court has held that the exposure of a witness' motivation in testifying is so significant that in a criminal case curtailment of effective cross-examination for bias may be a violation of the Sixth Amendment right of confrontation. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ Nevertheless, a defendant's right to elicit such evidence is not boundless, but is subject to reasonable limitations imposed by the trial judge in the exercise of sound discretion. *United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). *Accord, United States v. Mc Cann,* 465 F.2d 147, 163 (5th Cir. 1972), *cert. denied,* 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1973). *See also* 3 Weinstein's Evidence ¶ 607[03] and cases collected at note 10 (1981). The trial court may properly exclude evidence of bias or corruption

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. *See United States v. Renfro,* 620 F.2d 497, 500–501 (5th Cir. 1980), *cert. denied,* 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1981). *Cf. United States v. Uramoto,* 638 F.2d 84, 86 n.2 (9th Cir. 1980); *United States v. James,* 609 F.2d 36, 46 n.11 (2nd Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980).

■ The Defendant urges that extrinsic evidence should have been admitted in this case to demonstrate the corruption of a key government witness, Vincent DeMarco. Wigmore defines corruption as "the conscious false intent which is inferrible from giving or taking a bribe or from expressions of a general unscrupulousness *for the case in hand.*" 3A Wigmore on Evidence § 945 (Chadbourn rev. 1970) (emphasis added).

The evidence shows,[2] however, that the meeting on July 31, 1981 was arranged so that defense counsel William Costopoulos could interview DeMarco about his testimony in the upcoming trial of Mr. Hively for *another, unrelated* offense, scheduled for August of 1981. *See United States v. Hively,* Cr. No. 81–107 (M.D.Pa. Aug. 27, 1981) (verdict of acquittal). Mr. Gochenour testified at that first trial that DeMarco offered to "give us intelligence information about the government's case" and to "alter his story for whatever we cared it to be in a chance to assist Paul Hively." (Gochenour transcript at 11). *On July 31, 1981, the instant indictment had not yet been returned by the grand jury.* Clearly, then, the alleged bribe attempt related to the first trial, and not to "the case in hand." Although this evidence would have revealed the possibility of a bias against Mr. Hively because he did not accept the alleged offer,[3] the incident was *not* relevant as proof of corruption in *this* proceeding. Certainly, confusion of the issues was likely when the primary relevance of the evidence was to another proceeding.

More significantly, Gochenour's testimony about the alleged extortion attempt could not have been placed in its proper context without revealing the highly prejudicial fact of Mr. Hively's earlier trial for mail fraud. To permit Gochenour to testify without admitting evidence of the circumstances surrounding the alleged bribe would have misled the jury, we think, as to its true import. *See United States v. Smolar,* 557 F.2d 13, 21 (1st Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977) (not error to exclude cross-examination into witness' grant of immunity with regard to another securities fraud prosecution when defendants had objected to this evidence on direct, on theory that evidence would be prejudicial to defendants since witness had been involved with them in securities firm).

In addition, the probative value of the proffered testimony was slight. An offer to testify falsely which was not accepted would have tended to support the conclusion that the witness' trial testimony was the correct version. The government would certainly have been entitled to rehabilitate DeMarco by the introduction of taped statements made at an interview with Mr. Gochenour four days before the July 31 meeting that were substantially consistent with DeMarco's testimony at trial. Furthermore, government attacks on the credibility of Gochenour would have added to the confusion, and presented the danger of a lengthy "mini-trial" on the question of whether the attempted bribe actually occurred. *See United States v. Renfro,* 620 F.2d 497, 501 (5th Cir. 1980), *cert. denied,* 449 U.S. 921, 101 S.Ct. 921, 66 L.Ed.2d 149 (1981); *United States v. James,* 609 F.2d 36, 46 n.2 (2nd Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980).

Weighing the factors outlined in the foregoing discussion, therefore, we do not think it was error to prevent Mr. Gochenour from testifying. This was not a case of the complete preclusion or undue restriction of cross-examination as to a witness' motive for testifying. A denial of cross-examination would have implicated the Defendant's Sixth Amendment right of confrontation. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States v. Uramoto,* 638 F.2d 84 (9th Cir. 1980); *Skinner v. Cardwell,* 564 F.2d 1381, 1388–89 (9th Cir. 1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). *Cf. United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972). The defense counsel in this case, however, had

---

**2.** At the time of its motion in limine, the government provided the court with certain background information concerning the proffered evidence. The court was already cognizant of much of this information from a previous trial at which Mr. Gochenour had been permitted to give testimony about the alleged bribe incident. *See United States v. Hively,* Cr. No. 81–107 (M.D.Pa. Aug. 27, 1981) (verdict of acquittal).

**3.** At the July 31 meeting DeMarco also reputedly said that he would not have cooperated with the F.B.I. investigations if Mr. Hively had helped him when DeMarco first approached him for money and a job.

ample opportunity to conduct a vigorous and searching cross-examination of DeMarco about the alleged bribe. *Cf. Beaudine v. United States,* 368 F.2d 417, 422–24 (5th Cir. 1966). The jury also received considerable evidence regarding other motives DeMarco might have had to falsify his testimony. His plea agreement, unsentenced status, and hopes for leniency in return for his cooperation in the investigation and trial were brought out on direct examination. On cross-examination, defense counsel elicited the fact that in April of 1981 Hively had refused to provide DeMarco with money or an attorney. Thus, the jury in this case was presented with "sufficient information to make a discriminating appraisal of the witness' possible motives for testifying in favor of the government." *United States v. James,* 609 F.2d 36, 47 (2nd Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). *See also United States v. Kelley,* 545 F.2d 619, 623 (8th Cir. 1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977); *United States v. Blackwood,* 456 F.2d 526, 530 (2d Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 110 (1972).[4] The extrinsic evidence of the alleged extortion attempt was properly excluded in the exercise of the discretion granted to the court by Rule 403.[5]

## II. Cross-Examination of Character Witnesses

Defendant Hively contends that the court erred in permitting the prosecution to cross-examine defense character witnesses concerning whether they had heard certain rumors, specifically, that Defendant paid kickbacks in return for trucking contracts, and that Defendant employed thieves in his trucking business. The government made its proffer prior to the commencement of the Defendant's case, and at the court's direction provided authority for this line of questioning. Relying upon *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), the court concluded that when a defendant voluntarily places his reputation at issue he opens the door to tests of the reputation witnesses' credibility, including cross-examination about rumors circulating in the community. After receiving assurances from the prosecuting attorney that the rumors were bona fide, and an offer to disclose the government's sources to the court *in camera,* the court permitted the prosecutor to proceed with the cross-examination.[6]

Unfortunately, the court neglected to instruct the jury at the time of the cross-examination as to the limited purpose of the questioning. Neither counsel remarked on the need for a proper limiting instruction, despite the lengthy consultation and argument on the matter outside of the jury's presence. Counsel for the Defendant objected generally to the government's proffer, but made no request for an instruction to the jury.

At the close of the trial, neither counsel submitted any points for charge on the issue of the cross-examination, although both referred to the "attack on the character witnesses" in their closing arguments. The court failed to caution the jury in its charge that the questions regarding kickbacks and employment of thieves could be considered

---

4. DeMarco's credibility was further impeached by evidence of his criminal record and the fact that he had lied under oath during his 1975 trial. Defense counsel also probed effectively into inconsistencies in DeMarco's statements about the trailer thefts.

We note, in addition, that DeMarco was not the sole witness against Defendant Hively. His testimony was corroborated by other witnesses and by the documentary evidence. *Cf. United States v. Harvey,* 547 F.2d 720 (2d Cir. 1976).

5. Although the court did not explicitly state that Gochenour's testimony was excluded on the basis of Rule 403, it is clear from the colloquy at sidebar that the court had considered precisely those factors mentioned above. The use of the term "collateral" in explaining the court's reasoning was unfortunate, perhaps, but it was employed in the context of a discussion about the attention that would focus on the bribe incident and on Gochenour's own character for truthfulness.

6. The court specifically barred any inquiry about Defendant's previous indictment and trial for mail fraud, which had resulted in an acquittal.

only as evidence of the competency of the character witnesses to testify about the Defendant's reputation, and not as evidence of whether those allegations were in fact true and were indicative of a propensity toward crime. When defense counsel was asked at side bar if the court had omitted any charge that should have been given, he replied in the negative.

■ Defendant now seeks a new trial because the court did not give a cautionary instruction to the jury, and did not ascertain if there was a legitimate basis for the inquiries. The latter argument is without foundation in the record. The requirement of a good faith basis was specifically brought to the court's attention by the prosecutor. He offered to reveal *in camera* the names of individuals who personally advised him that the rumors of kickback payments were widespread in the Defendant's business community. Nevertheless, Defendant insists that the failure to require the government to actually present its proof as to the rumors of kickbacks was error. We do not think that this was necessary. An offer to prove the allegations or the existence of bona fide rumors is sufficient. *See United States v. Bright*, 588 F.2d 504, 512 (5th Cir. 1979), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Gosser*, 339 F.2d 102, 112 (6th Cir. 1964), *cert. denied*, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 66 (1965). *Cf. Gross v. United States*, 394 F.2d 216, 219 (8th Cir. 1968) (prosecution failed to *offer* to establish good faith), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1979). This court had no reason to doubt the sincerity and good faith of the prosecutor's offer.

■ The court's failure to instruct the jury on the limited purpose of the evidence presents a much more serious consideration. The Supreme Court in *Michelson* admonished that the "[w]ide discretion [to allow relevant cross-examination on reputation] is accompanied by heavy responsibility on trial courts to protect the practice from any misuse." *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). While we must ruefully admit that

the court should have provided adequate limiting instructions *sua sponte*, we think that because defense counsel made no request for the instructions, and did not object to its omission, a new trial is warranted only if the omission rises to the level of plain error. *See* Fed.R.Crim.P. 30 & 52(b). The error must be so substantial as to produce the likelihood of a grave miscarriage of justice. *United States v. Bates*, 600 F.2d 505, 510 (5th Cir. 1979); *United States v. Denton*, 556 F.2d 811, 817 (6th Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977).

■ The Defendant, however, points to *Gross v. United States* for the proposition that

the Government had a duty to provide a proper instruction concerning the cross-examination and, upon its failure to do so, it was the duty of the Court to supply a cautionary instruction to the jury.

*Gross v. United States*, 394 F.2d 216, 222 (8th Cir. 1968), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970). The *Gross* case took the above-quoted language from a Seventh Circuit decision in which an instruction *had been submitted* but was objected to by the defense because of its form. *United States v. Phillips*, 217 F.2d 435, 444 (7th Cir. 1954). Clearly, that situation is quite different from the instant one. In this case, the necessity of limiting instructions was never brought to the court's attention.

Unlike *Phillips*, the defendant in *Gross*, as here, did not request a limiting instruction. The appellate court in *Gross* found that the trial judge had abused his discretion in permitting cross-examination of the character witnesses as to whether they had heard of certain convictions and misdeeds. The reputation testimony in the *Gross* case, however, was incompetent on the independent basis that it related to a different place other than that of the offense, and to a time subsequent to the alleged crime. *Gross*, 394 F.2d at 219. The government in *Gross* could have had the testimony stricken on those grounds, without resort to cross-examination. Thus, the cumulative effect

of "the cross-examination... *plus* the failure to ascertain ... a legitimate base for the inquiry, *and* the failure to warn or instruct the jury," *Id.* at 222 (emphasis added), dictated reversal and a new trial. In the instant case, the cross-examination itself was proper, and the court inquired into the basis for the questions. The only error was the omission of cautionary instructions, which the defense had *three* opportunities to request. In identical circumstances in *United States v. Trollinger,* 415 F.2d 527 (5th Cir. 1969), the appellate court held that "there is no basis in this record for concluding that an error, if it was made, rises to the status of a plain error which should lead to reversal." *Id.* at 529. *See Malatkofski v. United States,* 179 F.2d 905, 914 (1st Cir. 1950) (failure to give limiting instruction *sua sponte* not reversible error when defendant made only general objections to cross-examination). *See also United States v. Clavey,* 565 F.2d 111, 118 (7th Cir. 1977) (passing mention of intention to tender character evidence instruction and inclusion in list of objections not sufficient to meet Rule 30 standards), *modified on other grounds,* 578 F.2d 1219 (1978).

Placing the cross-examination and the absence of instructions in the context of the entire trial, therefore, we conclude that the omission did not so prejudice the Defendant as to require a new trial. Two accomplices, Vincent DeMarco and Pete Holden, testified at length that between them they stole six refrigerated semi-trailers and sold them to Mr. Hively. Their testimony, as well as that of the company dispatcher, and considerable documentary evidence, supported by inferences that could be drawn from taped statements of the Defendant himself, indicated that, at the very least, Defendant was aware of the stolen character of the trailers from the circumstances of the sale. From this perspective, we seriously doubt that a few questions regarding rumors of kickbacks and the employment of thieves could have had such an impact on the jury as to have contributed to the conviction. Moreover, the references made to the evidence in closing arguments emphasized that the attack was on the *credibility* of the character witnesses, focusing on the talk that they had heard in the community. The defense counsel, particularly, stressed that there was no substantive evidence of the allegations. Finally, the cross-examination complained of dealt with rumors, not, as in many other cases, prior arrests or convictions, which would have had a far more prejudicial effect. *See United States v. Sangrey,* 586 F.2d 1312, 1315 (9th Cir. 1978) (trial court should have instructed *sua sponte* on limited purpose of testimony relating rape of victim's companion, but not reversible error when no instruction requested). *Cf. United States v. Diaz,* 585 F.2d 116, 118 (5th Cir. 1978) (absence of *sua sponte* cautionary instruction regarding evidence of prior conviction plain error only if conviction for same offense charged). The omission of limiting instructions was not plain error, and we will not grant a new trial on that basis.

CONCLUSION

Based on the foregoing discussion, therefore, we will deny Defendant's motion for a new trial.