865 F.2d 1150
 27 Fed. R. Evid. Serv. 147
 AGRISTOR LEASING, Plaintiff,
v.
Gene E. MEULI and Rose Marie Meuli, Defendants,
Third-Party-Plaintiffs, Appellants,
v.
A.O. SMITH HARVESTORE PRODUCTS, INC. and Mid-America
Harvestore, Inc., Third- Party-Defendants, Appellees.
 No. 86-2775.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 7, 1988.
 
 Brock R. Snyder and Brian Frost, Topeka, Kan., for defendants, third-party plaintiffs, appellants.
 Monte Vines and Clifford L. Malone of Adams, Jones, Robinson and Malone, Chartered, Wichita, Kan., for third-party-defendant, appellee A.O. Smith Harvestore Products, Inc.
 William Hergenreter of Shaw, Hergenreter & Quarnstrom, Topeka, Kan., for third-party-defendant, appellee Mid-America Harvestore, Inc.
 Before McKAY, SETH and ANDERSON, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.
 
 
 2
 This appeal in a diversity action (a third-party action) arises from the lease of a "Harvestore" silo by Gene and Rose Marie Meuli (the Meulis). The silo was manufactured by A.O. Smith Harvestore Products, Inc. (AOSHPI) and distributed through dealerships. The Meulis were approached about buying a Harvestore by Mid-America Harvestore, Inc. (Mid-America), the product's distributor for the area where the Meulis lived. After an extensive sales pitch by Mid-America's salesman, Robert Gattshall, the Meulis agreed to acquire a silo. Rather than buying it directly from Mid-America, they decided to enter into a lease agreement with AgriStor Leasing. AgriStor purchased the structure from Mid-America and leased it to the Meulis.
 
 
 3
 After making their initial lease payments, the Meulis did not make the subsequent lease payments. AgriStor filed suit to repossess the silo, and for money damages under the lease. The Meulis counterclaimed and filed this third-party action against AOSHPI, AOSHPI's parent corporation, A.O. Smith Corp., Mid-America and Robert Gattshall, claiming that the silo's implied warranty of merchantability had been breached and that they had been induced to enter into the lease agreement through the use of fraudulent misrepresentations.
 
 
 4
 A.O. Smith Corp. and AgriStor were dismissed from the suit prior to trial. The case went to trial on the Meulis' claims of fraud and breach of the implied warranty of merchantability. Mid-America and Gattshall were dismissed at the close of the Meulis' case. The jury returned a verdict in favor of the remaining defendant, AOSHPI.
 
 
 5
 The Meulis raise two issues on appeal. First, they claim that the trial court abused its discretion under Fed.R.Evid. 403 by excluding evidence pertaining to litigation over the performance and marketing of the Harvestore silo in California in the 1960's. Second, they claim that the trial court's dismissal of Mid-America was erroneous under Fed.R.Civ.Proc. 41(b) and 52(a) since the trial court failed to offer any reason for the dismissal. Each of these issues will be considered after a brief review of the facts.
 
 
 6
 In its marketing the company describes several features that it urges make its product superior to conventional silos. The witnesses' testimony was directed to these features. The Harvestore silo was characterized as an "oxygen-limiting" or "sealed" silo. Unlike conventional silos, which are open to fresh air, the walls, floor and roof of the Harvestore silo are airtight. This feature theoretically allows for less spoilage or loss of feed, and the feed should retain a higher percentage of nutrients. Silage acids can attack conventional structures made of concrete, galvanized steel or other materials. In theory, this deterioration will not occur in a Harvestore silo since it is made of heavy steel sheets that have a protective layer of glass fused into their surfaces. This forms a shield that repels silage acids and stands up to weathering. The impermeable construction of the silo thus enhances its "oxygen-limiting" capability. There were other claimed advantages from the silo's design.
 
 
 7
 The Meulis were told by Robert Gattshall, the salesman, that the added expense of the Harvestore silo would be offset by the savings that would accrue to their farming operation from the use of the silo. He estimated that the amount of money saved by the Muelis on protein supplement would more than cover the amount of their monthly rental payment. It was on the basis of these representations that the Meulis entered into the lease agreement for their Harvestore.
 
 
 8
 At trial, the Meulis claimed that the Harvestore did not produce the increase in feed quality that had been promised to them. Instead, they claimed the Harvestore silo's design was so flawed that the alfalfa stored within the structure actually experienced more exposure to oxygen than it would have in a more conventional silo. Their witnesses testified as to the design flaws, and that the oxygen which entered the silo caused more deterioration of the contents than for an ordinary silo.
 
 
 9
 The Meulis thus claimed that this influx of oxygen led to the deterioration of the alfalfa, which in turn reduced its nutritional value and led to reductions in the amount of weight gained by the Meulis' cattle. These allegations formed the basis of the Meulis' claim that the Harvestore silo was unmerchantable.
 
 
 10
 The Meulis also claimed that they were induced into leasing the silo through fraudulent misrepresentations made on behalf of the product. The Meulis claimed that AOSHPI represented the silo to them as "oxygen-limiting" when it had known for years that the structural defects of the silo were allowing a significant amount of oxygen to come into contact with the feed stored inside. At trial, the Meulis sought to present evidence of the poor performance of the Harvestore silos in California in the early to mid-1960s by a witness who had owned Harvestore structures in California in the late 1950s and early 1960s and later became a Harvestore dealer there. As a dealer, the witness was involved in customer relations and had the opportunity to speak with many Harvestore customers throughout the state. In an in limine hearing the Meulis represented that the witness would testify as to design defects in the silo and failures in its performance in California in the early and mid-1960s. They also stated at the hearing that the witness would testify that he informed AOSHPI of these problems, that AOSHPI ignored his warnings, and that ultimately he was forced to join with many Harvestore customers in litigation against the company. The litigation resulted in a substantial settlement for the witness and settlements and verdicts for other plaintiffs.
 
 
 11
 On the motion of AOSHPI, the trial court excluded the California evidence under Fed.R.Evid. 403, citing the dangers of unfair prejudice and confusion of the issues. It is this ruling by the trial court that the Meulis challenge on appeal. They claim that this ruling affected their substantial right to prove their case since this evidence was essential to overcome the clear and convincing standard of proof they had to meet on their fraud claim as well as to overcome the aura of legitimacy and reliability surrounding a large company like AOSHPI.
 
 
 12
 This court has evinced a strong reluctance to upset a trial court's ruling on the admissibility of evidence under Fed.R.Evid. 403. "Challenges under Rule 403 call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1257 (10th Cir.). This balancing task "is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." Id. (quoting Rigby v. Beech Aircraft Co., 548 F.2d 288, 293 (10th Cir.)). "The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion." K-B Trucking Co. v. Riss International Corp., 763 F.2d 1148, 1155 (10th Cir.) (emphasis added). See also Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835 (10th Cir.); Weir v. Federal Ins. Co., 811 F.2d 1387, 1396 (10th Cir.); Shoppin' Bag of Pueblo, Inc. v. Dillon Cos., 783 F.2d 159, 165 (10th Cir.).
 
 
 13
 During the in limine hearing, AOSHPI informed the court that it would respond to the Meulis' evidence on the California issues with evidence of three significant differences between the problems encountered by the Harvestore silo in California in the 1960s and the experiences of the Meulis in Kansas in the 1980s. AOSHPI noted that the incidents in California had taken place many years before the Meulis leased their silo and the product had undergone many design changes during those years, that the large farm demands placed on the product in California were far different from the demands placed on the product by the Meulis, and that the oxygen-free representations made by AOSHPI about the product in California differed significantly from the oxygen-limiting ones made to the Meulis. AOSHPI had withdrawn from the California market and settled the claims made against it there.
 
 
 14
 Based upon the offers of proof from both parties, and the evidence presented at trial up to that point (virtually the entire case of the Meulis), the trial court ruled that because of the danger of unfair prejudice to AOSHPI and the danger of confusing the issues to the jury, the California evidence was inadmissible. Each of these findings is clearly within the zone of the trial court's discretion within Rule 403. The record demonstrates the time differential, the design changes and the different climatic conditions. Thus the trial court justly could well conclude that each of these dangers outweighed the probative value of the evidence.
 
 
 15
 Under Fed.R.Civ.P. 61 and Fed.R.Evid. 103(a), this court will not set aside the verdict of a jury based on an error in the admission or exclusion of evidence unless the error prejudicially affects a substantial right of a party. See Beacham v. Lee-Norse, 714 F.2d 1010, 1014 (10th Cir.); Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir.), cert. denied, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171.
 
 
 16
 The Meulis presented evidence on each of the issues sought to be raised by the California evidence. On the issue of whether the Harvestore was merchantable, the Meulis presented numerous witnesses, including experts, who testified that the Harvestore silo was the cause of reduced weight gain and disease among the Meulis' cattle. On the fraud claim, the Meulis introduced numerous internal research reports, correspondence, and internal memoranda, from both AOSHPI and its parent corporation, relating to the issue of whether AOSHPI had notice of defects in its product and failed to correct them. During the in limine hearing, the trial court noted that the Meulis had presented sufficient evidence to overcome AOSHPI's motion for a directed verdict on both the merchantability and fraud claims despite the exclusion of the California evidence.
 
 
 17
 The Meulis also claimed that the California evidence was needed to rebut perceptions of legitimacy and reliability that attach to large companies like AOSHPI. They claimed that the exclusion of this evidence left the jury with the impression that the Meulis were the only people challenging the reliability of the Harvestore and the honesty of AOSHPI. Again, the Meulis introduced a variety of evidence to rebut any preconceived perceptions by the jury regarding AOSHPI's reliability and legitimacy.
 
 
 18
 Because the Meulis were able to introduce probative evidence on each of the issues raised by the California evidence, and because the trial court was careful to preserve the Meulis' right to use the California evidence on cross-examination for rebuttal purposes (a right the Meulis never needed to use), we cannot say that the trial court's exclusion of this evidence prejudicially affected a substantial right of the Meulis. Thus, even if the trial court had abused its discretion in excluding the evidence, which it did not do, we could not under Fed.R.Civ.P. 61 and Fed.R.Evid. 103(a) set aside the verdict of the jury in favor of AOSHPI. Beacham v. Lee-Norse, supra; Rasmussen Drilling, supra.
 
 
 19
 The Meulis also appeal the trial court's dismissal of defendant Mid-America from the suit after the close of the Meulis' case, but it is clear from the record that the Meulis failed to properly object to the dismissal of either claim. This failure to object precludes us under these circumstances from considering this issue on appeal. Not only did the Meulis fail to object to the dismissal of Mid-America on the breach of warranty claim, they specifically assented to the dismissal.
 
 
 20
 At the end of the same hearing, the trial judge dismissed the case against Mid-America in its entirety. The trial judge did not offer a separate basis for the dismissal of the fraud claim against Mid-America. Nevertheless, the Meulis' counsel made no objection to the dismissal of the fraud claim, nor did he ask for a reconsideration of the dismissal of the breach of warranty claim. He did not request an explanation or clarification of the dismissal. The trial judge was very clear in ruling that the entire claim against Mid-America was being dismissed.
 
 
 21
 The judgment of the trial court is AFFIRMED.