978 F.2d 1162
 61 USLW 2295, Fed. Sec. L. Rep. P 97,045,
36 Fed. R. Evid. Serv. 1036
 SECURITIES and EXCHANGE COMMISSION, Plaintiff-Appellant,
v.
Don S. PETERS, Defendant-Appellee.
 No. 90-3346.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 26, 1992.
Rehearing Denied Dec. 15, 1992.
 
 Jacob H. Stillman, Associate Gen. Counsel (James R. Doty, Gen. Counsel, Katharine Gresham, Asst. Gen. Counsel, Mark Pennington, Atty., and Paul Gonson, Sol., of counsel, with him, on the brief), S.E.C., Washington, D.C., for plaintiff-appellant.
 Stephen M. Joseph (Charles E. Millsap, with him, on the brief), Joseph, Robison & Anderson, Wichita, Kan., for defendant-appellee.
 Before MOORE and EBEL, Circuit Judges, and ALLEY, District Judge.*
 EBEL, Circuit Judge.
 
 
 1
 This is an appeal from a jury verdict for the defendant in a civil suit for insider trading in violation of Section 10(b) of the Securities and Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rules 10b-5 and 14e-3, 17 C.F.R. §§ 240.10b-5 and 240.14e-3. First, we hold that the SEC has authority under Section 14(e) of the Act, 15 U.S.C. § 78n(e), to promulgate Rule 14e-3, which provides for insider trading liability against a defendant for trading securities, or causing securities to be traded, upon material, nonpublic information relating to a tender offer so long as the defendant knew or had reason to know that the information came from an insider. Thus, we hold that the district court erred in instructing the jury that a defendant must also breach a fiduciary duty before Rule 14e-3 is violated. Second, we hold that the district court erred by refusing to permit cross-examination of the defendant and his opinion character witnesses regarding prior fraud suits against the defendant that settled without findings or admissions. Because we conclude that these errors were prejudicial, we reverse and remand for a new trial.
 
 FACTS
 
 2
 In 1983, the defendant-appellee, Don S. Peters, entered into a partnership called Investment Management Group ("IMG"). One of the IMG partners, Ivan West, individually did consulting work for Energy Resources Group, Inc. ("ERG"). This work included assisting ERG in finding an investor to make a friendly tender offer for ERG's stock. West's consulting work for ERG was excluded from the IMG partnership because that work was underway at the time that the IMG partnership was formed.
 
 
 3
 With West's help, ERG reached an agreement with Broken Hill Proprietary Company ("Broken Hill"), pursuant to which Broken Hill made a tender offer for ERG's stock. Shortly before the announcement of the tender offer, several private investors bought substantial quantities of ERG stock, which they sold at a significant profit soon after the announcement was made. The SEC alleged that these investors traded upon inside information and that Peters was the source of this information.
 
 
 4
 The SEC brought a civil suit against Peters for insider trading under Section 10(b) and SEC Rules 10b-5 and 14e-3. The SEC's theory was that Peters secretly viewed documents regarding the Broken Hill tender offer that West kept at the IMG offices. According to the SEC, Peters gave information from these documents regarding the timing of the imminent tender offer to two parties. First, the SEC alleged, Peters gave the information to a broker named Ken Mick, who passed it on to several of his clients, who in turn used the information to profit by trading ERG stock. After receiving a share of the profits from these clients, Mick repaid a $43,000 debt to Peters. Second, the SEC alleged that Peters gave the information to a former client, Bernard Lounsbury, who used the information to profit by trading ERG stock. Lounsbury used a portion of his profits to repay a $7,500 debt to Peters.
 
 
 5
 The jury returned a verdict for Peters on all of the allegations. The SEC appeals that verdict and the district court's denial of its motion for a new trial. The SEC asserts two grounds of error on appeal. First, the SEC argues that the district court erred by instructing the jury that liability under Rule 14e-3 requires a breach of fiduciary duty. Second, the SEC argues that the district court erred by restricting its ability to cross-examine Peters and several of his character witnesses regarding prior fraud suits against Peters. We address each of these arguments in turn.
 
 I. Fiduciary Duty and Rule 14e-3
 
 6
 The district court instructed the jury that to find a violation of Rule 14e-3 it must find "that the defendant's action ... constituted a violation of the relationship of trust and confidence he held with West." Jury Instruction 17, in SEC App. at 144. The SEC objected to this element of the Rule 14e-3 instruction and now appeals its inclusion. We review this legal question de novo. Northern Natural Gas Co. v. Grounds, 931 F.2d 678, 681 (10th Cir.1991).
 
 
 7
 On its face, Rule 14e-3 requires no breach of a fiduciary duty. The Rule provides, in relevant part, that
 
 
 8
 it shall constitute a fraudulent, deceptive or manipulative act or practice within the meaning of section 14(e) of the Act for any ... person who is in possession of material information relating to [a] tender offer which information he knows or has reason to know is nonpublic and which he knows or has reason to know has been acquired directly or indirectly from [an insider] to purchase or sell or cause to be purchased or sold any of [the securities sought by the tender offer] ... unless within a reasonable time prior to any purchase or sale such information and its source are publicly disclosed by press release or otherwise.
 
 
 9
 17 C.F.R. § 240.14e-3(a).
 
 As explained by the Second Circuit:
 
 10
 One violates Rule 14e-3 if he trades on the basis of material nonpublic information concerning a pending tender offer that he knows or has reason to know has been acquired "directly or indirectly" from an insider of the offeror or issuer, or someone working on their behalf. Rule 14e-3 is a disclosure provision. It creates a duty in those traders who fall within its ambit to abstain or disclose, without regard to whether the trader owes a pre-existing fiduciary duty to respect the confidentiality of the information.
 
 
 11
 United States v. Chestman, 947 F.2d 551, 557 (2d Cir.1991) (en banc) (emphasis added), cert. denied, --- U.S. ----, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992).
 
 
 12
 Peters does not dispute that Rule 14e-3, on its face, contains no fiduciary duty requirement. Rather, he argues that a fiduciary duty requirement must be read into Rule 14e-3 to prevent the rule from exceeding the SEC's rulemaking authority under Section 14(e). The district court apparently agreed. We disagree, and hold that Rule 14e-3, as written--i.e., with no fiduciary duty requirement--is within the SEC's statutory rulemaking authority.
 
 
 13
 A rule exceeds its statutory authority if it is " 'inconsistent with the statutory mandate or ... frustrate[s] the policy that Congress sought to implement.' " Securities Indus. Ass'n v. Board of Governors ("SIA "), 468 U.S. 137, 143, 104 S.Ct. 2979, 2992, 82 L.Ed.2d 107 (1984) (citation omitted). We hold that Rule 14e-3 is consistent with its statutory mandate and with the policy that Congress sought to implement.
 
 
 14
 The statutory mandate for Rule 14e-3 is broad--indeed, much broader than the statutory mandate for Rule 10b-5. Section 14(e) specifically authorizes the SEC to "define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative." 15 U.S.C. § 78n(e).[1] This mandate raises two questions: First, what did Congress mean by "fraudulent, deceptive, or manipulative" in Section 14(e)? Second, to what extent does this definition constrain the SEC's rulemaking authority?
 
 
 15
 Peters argues that the phrase "fraudulent, deceptive, or manipulative" in Section 14(e) refers only to fraudulent nondisclosure as defined by the caselaw under Section 10(b) and Rule 10b-5. See Schreiber v. Burlington Northern, Inc., 472 U.S. 1, 10-11, 105 S.Ct. 2458, 2464, 86 L.Ed.2d 1 (1985) ("Section 14(e) adds a 'broad antifraud provision,' modeled on the antifraud provisions of § 10(b) of the Act and Rule 10b-5. It supplements the more precise disclosure provisions found elsewhere in the Williams Act, while requiring disclosure more explicitly addressed to the tender offer context than that required by § 10(b).") (citations and footnote omitted).[2] Liability for fraudulent nondisclosure under Section 10(b) and Rule 10b-5 requires breach of a duty to disclose before trading premised upon a fiduciary duty "of trust and confidence between parties to the transaction." See Chiarella v. United States, 445 U.S. 222, 230, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980). Thus, Peters argues, liability for fraudulent nondisclosure under Section 14(e)--i.e., for "fraudulent, deceptive, or manipulative acts or practices"--also requires breach of a fiduciary a duty of trust and confidence.[3]
 
 
 16
 Even if we were to accept Peters' argument that Section 14(e) is concerned only with preventing fraudulent nondisclosure as defined under Section 10(b),[4] we conclude that Rule 14e-3 is "reasonably designed" to achieve this goal in the tender offer context. Chestman, 947 F.2d at 558. Rule 14e-3 helps to prevent such fraudulent nondisclosure by easing an evidentiary burden that might often prevent liability from attaching to such conduct in a tender offer setting.
 
 
 17
 Proving under Section 10(b) that a trader has breached a fiduciary duty in trading on undisclosed insider information may be extremely difficult. For example, under Rule 10b-5, a tippee assumes a duty to disclose "only when [an] insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should have known that there has been a breach." Dirks v. SEC, 463 U.S. 646, 660, 103 S.Ct. 3255, 3265, 77 L.Ed.2d 911 (1983). Thus, proving that such a tippee has a duty to disclose under Rule 10b-5 requires proof not only that the tippee knowingly received confidential information from an insider, but also that the insider was culpable in supplying such information to the tippee. Yet, in most cases, the only parties to the exchange will be the insider and the alleged tippee, and it may be difficult to prove the insider's culpability in the exchange.
 
 
 18
 Particularly in the context of a tender offer, there is a fairly wide circle of people with confidential information who may lack a long-term loyalty to the issuer and who may be tempted to take advantage of the very large short-term profits potentially available through insider trading just prior to the announcement of the tender offer. Under these circumstances, it may be possible to prove circumstantially that a person was knowingly trading on insider information, but almost impossible to prove that the trader obtained such information in breach of a fiduciary duty owed either by the trader or by the ultimate insider source of the information.
 
 
 19
 Thus, Congress gave the SEC broad prophylactic power to "define and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative." In response to that rulemaking mandate, the SEC adopted Rule 14e-3 to ease the evidentiary burden by eliminating the need to prove a breach of fiduciary duty. In the context of a tender offer, the SEC need only prove that the trader knowingly received the confidential information directly or indirectly from an insider, but need not prove that the trader obtained the information in breach of a fiduciary duty. In order effectively to prevent people from fraudulently trading on insider information obtained or used in breach of a fiduciary duty, the SEC may appropriately promulgate the fairly broad proscriptions in Rule 14e as a prophylactic measure. Rule 14e-3 is "reasonably designed" to prevent fraudulent trading on insider information by prohibiting the recipient of such insider information from trading on it when such person knows that the source of the information could not trade on it. Thus, in the tender offer context, Rule 14e-3 is consistent with the SEC's explicit and broad rulemaking authority under Section 14(e). Our holding is in accord with the Second Circuit en banc opinion in United States v. Chestman, 947 F.2d 551 (2d Cir.1991) (en banc).
 
 
 20
 Our holding also receives support from Congress' later enactment of the Insider Trading and Securities Fraud Enforcement Act of 1988, Pub.L. No. 100-704, 102 Stat. 4677 (codified at 15 U.S.C. § 78u-1 note). In its official findings contained in the Act, Congress noted its approval of "the rules and regulations of the [SEC] under the Securities and Exchange Act of 1934 governing trading while in possession of material, nonpublic information." Id. § 2(1), 102 Stat. at 4677. Congress also noted its approval of the SEC's enforcement of those rules. Id. § 2(2), 102 Stat. at 4677. Admittedly, Congress does not appear to have specifically debated Rule 14e-3, but we presume that Congress was aware of Rule 14e-3 and its implications when it made its finding.
 
 
 21
 Peters next argues that even if Rule 14e-3 is valid as written, and the district court's instruction therefore erroneous, this error was harmless. Again, we disagree. Where a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction. Adams-Arapahoe Joint Sch. Dist. v. Continental Ins. Co., 891 F.2d 772, 779-80 (10th Cir.1989). Our reading of the record convinces us that the jury might have found for Peters on the district court's interpretation of Rule 14e-3 that it required proof that Peters obtained the information in breach of a fiduciary duty to West.
 
 
 22
 In order for the jury to hold Peters liable, the erroneous instruction required the jury to find that Peters' conduct "constituted a violation of the relationship of trust and confidence he held with West." Instruction 17, SEC App. at 144. A second instruction elaborated:A relationship of trust and confidence may arise by an actual, explicit agreement or by an implicit agreement representing the mutual expectations of the parties. In the present case, this element is satisfied if you determine that the defendant used information relating to ERG which had been obtained from West, and that the use of this information represents a breach of the agreements and expectations of privacy and confidentiality entered into by the partners of the IMG partnership.
 
 
 23
 Instruction 23, id. at 150 (emphasis added). In his opening statement, Peters' counsel noted that West's work for ERG was excluded from the partnership.[5] Both West and Peters testified that West's ERG work was excluded from the partnership. The jury might have concluded from this fact that Peters' relationship of trust and confidence with West, and therefore his duty, was limited to partnership information. Because ERG, and presumably any information pertaining to ERG, was excluded from the partnership, the jury might have concluded that Peters owed no duty to West with respect to the ERG information.
 
 
 24
 Peters asserts that he admitted to the jury that he held a duty to West. However, Peters' purported admission could be construed to relate only to the partnership, not to West in his nonpartner capacity, and therefore the admission does not preclude the possibility that the jury based its decision on the erroneous instruction. Peters' purported admission regarded "the confidentiality of information that came into the group." Appellee's Supp.App. at 323 (emphasis added). Peters admitted that "[i]f one partner were to take information from another partner and to disclose it to the outside," such an act would violate the partner's expectations. Id. at 324 (emphasis added). If the jury believed that the ERG information never came into the partnership, and that West possessed all ERG information only in an individual, nonpartner capacity, the jury might have found that Peters did not violate a duty to West even if he stole ERG information.[6]
 
 II. The Evidentiary Rulings
 
 25
 At trial, Peters testified as to his own good character, stating that in twenty-three years of working for a bank he had never been accused of wrongdoing.[7] On cross-examination, the SEC sought to ask Peters "has anybody accused you of passing confidential information after [the date that you stopped working for the bank]?" Id. at 524 (emphasis added). Apparently, the proposed question sought to elicit the fact that after Peters had left the bank and formed IMG, an investment advisory client named Mary Wilkins sued Peters for fraud. Id. The Wilkins suit apparently settled with no admission of wrongdoing. Id. at 510. The district court refused to permit this line of cross-examination. Id. at 524.
 
 
 26
 Additionally, Peters presented seven witnesses who testified that, in their opinion, Peters' character was impeccable. On cross-examination, the SEC sought to ask these witnesses three questions:
 
 
 27
 (1) Are you aware that Mr. Peters was sued for fraud ... in violation of Rule [10b-5] in an action relating to Tectel Corporation called Vizier versus Tectel in Colorado, and would that have affected your opinion?
 
 
 28
 (2) Are you aware that the defendant was sued by a plaintiff named Mary Wilkins here in the district court for the District of Kansas in a suit charging him with fraud [in] violation of Rule [10b-5], and would that have affected your opinion? [and]
 
 
 29
 (3) Are you aware that in sworn testimony one of Mr. Peters' investment advisory clients, Mary Wilkins, testified under oath that Mr. Peters had told her he had inside information on a number of companies, and would use that information in making investment recommendations to her, and would that information have affected your opinions?
 
 
 30
 Id. at 299-300. Apparently, the Tectel matter, like the Wilkins matter, settled with no admission of wrongdoing. See id. at 301. The district court refused to permit this line of cross-examination, as well. Id. at 304.
 
 
 31
 The SEC objected to these evidentiary rulings below and now appeals them.
 
 
 32
 A. "Have You Heard" Questions and Opinion Character Witnesses
 
 
 33
 The district court denied the SEC's proposed cross-examination questions based upon a distinction between opinion character testimony and reputation character testimony. See Memorandum and Order (Oct. 9, 1990), at 4-5, in App. of SEC at 207-08. A reputation character witness testifies as to a party's general reputation in the community, whereas an opinion character witness testifies as to his own opinion of the party's character. The district court noted, correctly, that a reputation character witness can be asked on cross-examination whether he has heard about a certain event. See Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948). However, in denying the SEC's motion for new trial, the district court concluded, erroneously, that an opinion character witness cannot be asked a "have you heard" question on cross-examination. We review this ruling of law de novo.
 
 
 34
 There is no basis for differentiating between opinion and reputation character evidence in this regard. Prior to the adoption of Federal Rule of Evidence 405, opinion character evidence was not permitted to be introduced at all--only reputation character evidence was permitted. See Fed.R.Evid. 405, Advisory Committee Note ("In recognizing opinion as a means of proving character, the rule departs from usual contemporary practice ..."); United States v. Polsinelli, 649 F.2d 793, 795 (10th Cir.1981). The drafters of the Rule noted that "reputation evidence is ... largely ... opinion in disguise." Fed.R.Evid. 405, Advisory Committee Note. Accordingly, Rule 405(a) dismantled the distinction between these two types of character evidence, providing that "proof may be made by testimony as to reputation or by testimony in the form of an opinion."
 
 
 35
 Rule 405 clearly intends that opinion and reputation witnesses be treated similarly with respect to cross-examination. Rule 405(a) provides that "[o]n cross-examination, inquiry is allowable into specific instances of conduct." The Advisory Committee noted,
 
 
 36
 According to the great majority of cases, on cross-examination inquiry is allowable as to whether the reputation witness has heard of particular instances of conduct pertinent to the trait in question. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Annot., 47 A.L.R.2d 1258. The theory is that, since the reputation witness relates what he has heard, the inquiry tends to shed light on the accuracy of his hearing and reporting. Accordingly, the opinion witness would be asked whether he knew, as well as whether he had heard. The fact is, of course, that these distinctions are of slight if any practical significance, and the second sentence of subdivision (a) eliminates them as a factor in formulating questions.
 
 
 37
 Thus, Rule 405 does not preclude "have you heard" questions on cross-examination of opinion witnesses.
 
 
 38
 The district court's conclusion to the contrary was based primarily on dicta in United States v. Curtis, 644 F.2d 263 (3d Cir.1981), cert. denied, 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). However, Curtis is, in fact, not supportive of the exclusion of this cross-examination evidence. In Curtis, the defendant put on reputation character witnesses. On cross-examination, over objection, the government asked whether the witnesses' opinion would change if they knew that the defendant had admitted involvement with drug sales. The Third Circuit held that the witnesses' opinions were not relevant to the reputation testimony they had given. Id. at 269. In discussing the proper scope of cross-examination of reputation character witnesses, the Third Circuit contrasted that scope with the proper scope of cross-examination of opinion character witnesses, noting that "an opinion witness can be cross-examined only on matters bearing on his own opinion." Id. (emphasis added).
 
 
 39
 However, the allegations against Peters that the SEC wanted to explore on cross-examination potentially could bear on the witnesses' opinion of Peters and the SEC should have been permitted to explore that possibility. The fact that a party has previously been accused of fraud bears not just upon the party's reputation in the community. Such an accusation may bear also on the opinion witness' personal opinion of the party. Furthermore, such allegations may reflect upon the credibility and reliability of the opinion witness. If the witness has not heard of the allegations, the depth of his or her knowledge might be called into question. If the witness has heard of the allegations but nevertheless favorably appraises the party's character, the witness' objectivity might be called into question.[8]
 
 
 40
 In summary, cross-examination questions regarding allegations of prior misconduct could "bear[ ] on [the witness] opinion" and thus, even under Curtis, the district court should have permitted the inquiry.
 
 
 41
 The district court stated that these opinion witnesses could not be questioned about matters as to which they lacked first-hand knowledge. Of course, the only way to find out whether these witnesses did have first-hand knowledge of the allegations against Peters would be through the very type of questions that the court refused to allow. Thus, the SEC was put in a catch-22 situation. In any event, it is well established that opinion witnesses may be asked "have you heard" questions concerning rumors, allegations or events about which the witnesses may lack first-hand knowledge. Several other circuits have held that it is proper to ask "have you heard" questions to opinion character witnesses. See United States v. Manos, 848 F.2d 1427, 1431 (7th Cir.1988); United States v. McGuire, 744 F.2d 1197, 1204-05 (6th Cir.1984) (allowing cross-examination of opinion witnesses about pending allegations), cert. denied, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1985); United States v. Grady, 665 F.2d 831, 834-35 (8th Cir.1981) (allowing cross-examination of opinion witnesses about dismissed criminal charges against defendant); see also United States v. Birney, 686 F.2d 102, 108 (2d Cir.1982) ("have you heard" cross-examination permitted where limiting instruction given pursuant to a party's request). We are aware of no authority to the contrary.
 
 
 42
 Opinions are, after all, almost always based on more than first-hand experience. Opinions are formed from a complex mosaic that includes first-hand experiences, circumstantial inferences, and even hearsay rumors, anecdotes and opinions expressed by others. If a witness expresses a favorable opinion about a party on direct examination, the strength and reliability of that opinion may be tested on cross-examination on all the elements or components that contributed or may have contributed to the opinion.[9]B. Abuse of Discretion
 
 
 43
 Although the district court did not explicitly rely on Federal Rule of Evidence 403 as an alternative basis for its ruling barring the SEC's questions, it did conclude that the prejudicial effect of the questions sought to be asked by the SEC outweighed their probative value. Thus, we also review the district court's ruling under Rule 403. That rule provides:
 
 
 44
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... or by considerations of undue delay....
 
 
 45
 Evidence is properly excluded under Rule 403 if "after balancing its probative value against certain competing considerations set forth in the rule [the court] conclude[s] that the costs of the evidence outweigh its benefits." United States v. Mangiameli, 668 F.2d 1172, 1176 (10th Cir.), cert. denied, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). However, it must be kept in mind that Rule 403 authorizes the exclusion of relevant evidence only when the countervailing considerations "substantially outweigh [ ]" the probative value of such evidence. Rule 403 (emphasis added). Almost all evidence will be perceived by one side or the other to be prejudicial, and it is generally thought that the jury can best determine the truth when it has access to all the relevant admissable evidence. Consequently, we have held that "[t]he exclusion of relevant evidence under Rule 403 is 'an extraordinary remedy to be used sparingly.' " K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155 (10th Cir.1985) (citation omitted). In weighing the factors under Rule 403, the court should generally " 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' 1 J. Weinstein & M. Burger, Weinstein's Evidence p 403, at 403-25 to 403-26 (1982)." K-B Trucking, 763 F.2d at 1155 n. 9.
 
 
 46
 Because the district court is in a superior position to judge both the probative value and the potential prejudice of tendered evidence, we have recognized that "[a] trial court has broad discretion in applying Rule 403," Id., and we will reverse an evidentiary ruling only upon a showing of "clear abuse of discretion." K-B Trucking Co., 763 F.2d at 1155. We do not take this standard lightly, and indeed it is comparatively rare when we reverse for an evidentiary ruling. We do so here in the unique context of this record and of our other rulings on this appeal because we are firmly convinced that it was an abuse of discretion to allow Peters to use affirmatively, and powerfully, the testimony about his good character while denying the SEC an effective opportunity to rebut that testimony.
 
 
 47
 Peters introduced an extraordinary parade of character witnesses, many with impressive standing in the community, and he chose to make his character and his unblemished history a very important part of his defense. Indeed, Peters' attorney opened the case by advising the jury that "what may be ultimately the most important evidence in this case [is] ... who Don Peters is...." Tr. at 44, in App. of SEC at 217. However, the jury was deprived of a fair and balanced opportunity to evaluate Peters' character. Peters was allowed to testify that in his 23 years working as an officer of a bank that he had never been accused of misusing confidential information, but the SEC was precluded from asking him if it was not true that such an allegation was made against him shortly after he left the bank. Further, Peters was allowed to introduce seven character witnesses who said, in essence, that they believed he would never commit fraud or misuse confidential information, and the SEC was then denied the opportunity even to make the threshold inquiry of those witnesses as to whether they had knowledge of several lawsuits (and sworn charges under oath) that Peters had committed fraud and had misused and offered to misuse confidential information. We conclude that in excluding these impeachment questions, the district court abused its discretion. See Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647-54 (10th Cir.1991) (abuse of discretion to exclude expert testimony).
 
 
 48
 The court assigned to the proposed evidence a probative value of "nil." Memorandum and Order (Oct. 9, 1990), in App. of SEC at 212. We disagree. The excluded questions were probative for two purposes. First, the proposed cross-examination of Peters about the Wilkins suit was probative as to Peters' track record, which Peters had put at issue by testifying that he had not been accused of wrongdoing in his twenty-three years at the bank. Without the SEC's proposed cross-examination, the jury received a one-sided picture of Peters' track record as presented by Peters. Second, the proposed cross-examination of Peters' character witnesses about both the Tectel and the Wilkins suits was probative as to the strength of the foundation for and objectivity of each witness' testimony. As discussed above, if a witness was unaware of the prior suits, the jury could rationally conclude that the witness' opinion as to Peters' character was based on incomplete information. Cf. Michelson, 335 U.S. at 483, 69 S.Ct. at 222. And if the witness was aware of these suits or would not have changed his opinion after he became aware of them, the jury could rationally question the witness' objectivity. Cf. id. at 482, 69 S.Ct. at 222. The prior suits are particularly relevant, as they both involved allegations similar to those at issue in this suit. Both prior suits involved fraud, and one involved allegations related to insider trading. Cf. id. at 483, 69 S.Ct. at 222 (dissimilarity of prior accusation does not preclude inquiry where prior accusation involved similar character traits to those involved in the case at bar).
 
 
 49
 The district court's concern about prejudice was based upon its conclusion that "[t]he fact you get sued in fraud probably gives rise to some questions in the minds of uninformed people that might affect [Peters'] reputation." Tr. at 283, in App. of SEC at 302. The court was also concerned that once evidence of the fraud suits was admitted, the fraud suits would essentially need to be relitigated: Peters would want to introduce evidence that the suits were groundless and the SEC would then want to show that the suits had merit. Id. at 1378, 1380, in App. of SEC at 510, 512.
 
 
 50
 Of course, none of this would have arisen had not the defendant chosen to advance his good character and background into the case. In any event, the questions sought to be asked by the SEC do not require (or even permit) litigation of the truth or falsity of the underlying accusations. The questions directed to the character witnesses only sought to determine if they were aware of the prior lawsuits, and the question directed to Peters only sought to require him to tell the whole story when he testified that he had had no "accus[ations]" or "claims" against him. The court does not appear adequately to have considered the possibility of a limiting instruction to minimize any prejudice and delay caused by the SEC's proposed inquiries. The Advisory Committee note to Rule 403 states that "[i]n reaching a decision on whether to exclude [evidence] on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction." For example, the court might have instructed the jury that testimony about the prior litigation was relevant only in evaluating the foundation for and objectivity of the character witnesses' testimony and in evaluating defendant's candor about his own history. There is no dispute here that such prior lawsuits and charges did, in fact, exist, and the court could have advised the jury that it should not be concerned with the underlying truth or falsity of such allegations. We do not presume to instruct the district court how the risk of prejudice should have been handled, but we simply point out, consistent with the commentary to Rule 403, that there were tools available to minimize the problems without excluding the questions altogether.
 
 
 51
 Moreover, the exclusion of the questions was clearly prejudicial to the SEC. In this case, which all of the parties admit was based almost entirely on circumstantial evidence, Peters' character was central. As noted above, in his opening statement, Peters began, "Let's talk first about what may be ultimately in this case the most important evidence. Specifically[,] let's talk about who Don Peters is...." Tr. at 44, in App. of SEC at 217. Furthermore, as part of this discussion, Peters told the jurors about the character witnesses that he intended to call. After noting that a particular witness would "testify that in his opinion Mr. Peters' character for honesty and integrity is excellent," Peters noted that "[t]hat is really what this case is all about." Id. at 52, in App. of SEC at 221. The centrality of the character testimony in this case is also attested to by its prominent place in Peters' closing argument. Just prior to his summation, Peters argued that "[t]here are eight reasons to believe that Don Peters is an honest man, eight of them." Tr. at 1660, in Appellee's Supp. App. at 426. Seven of the eight "reasons" that followed were statements by Peters' character witnesses. The emphasis that Peters placed upon his character witnesses was well-founded. These witnesses, most of whom possessed extremely impressive credentials, painted an extraordinarily positive picture of Peters' character.
 
 
 52
 Granted, in its ruling on the SEC's motion for a new trial, the district court stated that "the use of character evidence in the present case was not the main focus of the defense." Memorandum and Order (Oct. 9, 1990), at 4 n. 2, in App. of SEC at 207 n. 2. However, during the trial, the district court stated, "As to the defense in this case of character testimony, I think that I said once at the bench that the defendant's character is all important to the defense and paramount as a jury might weigh his own believability as to what he did or didn't do." Tr. at 1378, in App. of SEC at 510. In any event, our independent reading of the record leads us to the conclusion that the district court's exclusion of the SEC's proposed cross-examination questions was not harmless error. Rather, we are left with a clear impression that these character witnesses and Peters' own testimony of his unblemished past could very well have played a dominant role in persuading the jury to return its verdict for Peters. When Peters chose to make his character an important part of his defense and the court allowed him to present this evidence without submitting to effective cross-examination, prejudicial error occurred.
 
 CONCLUSION
 
 53
 The district court's erroneous and prejudicial jury instruction on Rule 14e-3 requires reversal and a remand for a new trial on the SEC's Rule 14e-3 count. The district court's erroneous and prejudicial exclusion of the SEC's proposed cross-examination of Peters and his character witnesses requires reversal and a remand for a new trial on all counts. Accordingly, we REVERSE and REMAND for a new trial as to all counts.
 
 
 54
 ALLEY, District Judge, concurring in part and dissenting in part:
 
 
 55
 I concur in the majority's disposition of this case, but disagree with its opinion in Part II B that the district court abused its discretion in excluding the SEC's proposed "have you heard" cross-examination of Peters' character witnesses about prior civil cases filed against Peters, and cross-examination of Peters about those cases. No findings adverse to Peters were made in those cases. It is true that under Fed.R.Evid. 403, the probative value of relevant evidence must be substantially outweighed by the danger of unfair prejudice in order to justify exclusion. However, considering the evidence offered and granting the claimed probative value in full, then balancing that against the persuasive countervailing factors cited by the trial judge, I am unable to agree that the district court abused its discretion in excluding the proposed questions. I therefore respectfully dissent to this extent from the majority opinion.
 
 
 56
 An appellate court that concludes that an "abuse of discretion" has occurred has expressed a severe criticism of the decision below. The majority utilizes an abuse of discretion standard yet eschews any definition whatsoever of "abuse of discretion." The reason is that the majority has simply substituted its discretion for that of the trial court.
 
 
 57
 The Tenth Circuit has espoused a variety of definitions of "abuse of discretion," but in my view, the concept should never be construed under a flabby definition. The formulation that best delineates between trial and appellate functions is stated in United States v. Wright, 826 F.2d 938, 943 (10th Cir.1987), wherein our circuit correctly defines "abuse of discretion" as
 
 
 58
 a judicial determination [that] is arbitrary, capricious or whimsical. It is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of impartiality [sic], prejudice, bias or ill-will as shown by evidence or the record of proceedings.
 
 
 59
 See also United States v. Cardenas, 864 F.2d 1528, 1530 (10th Cir.1989), cert. denied, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). This definition properly acknowledges that appellate courts should not fritter their limited resources in making determinations that ought to repose at the trial level. Under the Wright definition, I am unable to find any abuse of discretion by the district court.
 
 
 60
 Until today, this circuit has consistently held that the decision to exclude evidence is within the "sound discretion of the trial court, and will not be reversed ... absent a clear abuse of discretion." K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155 (10th Cir.1985) (emphasis added). Accord Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990); Agristor Leasing v. Meuli, 865 F.2d 1150, 1152 (10th Cir.1988). Indeed, in Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948) (emphasis added), the Supreme Court, in considering the manner and extent of cross-examination of character witnesses stated:
 
 
 61
 Both propriety and abuse of hearsay reputation testimony, on both sides, depend on numerous and subtle considerations, difficult to detect or appraise from a cold record, and therefore rarely and only on clear showing of prejudicial abuse of discretion will Courts of Appeals disturb rulings of trial courts on this subject.
 
 
 62
 Moreover, as recently as October 7, 1992, another panel of the Tenth Circuit stated that the "balancing of competing interests required by Rule 403 is a task to which the trial judge is particularly suited, United States v. Keys, 899 F.2d 983, 987 (10th Cir.1990), and 'we will not disturb the trial judge's ruling absent a clear abuse of discretion.' " United States v. Hartsfield, 976 F.2d 1349, 1352 (10th Cir.1992) (quoting Keys, 899 F.2d at 987). A clear abuse of discretion has not been demonstrated in this case.
 
 
 63
 In my opinion, the district court had discretion to exclude the proposed questions, as cross-examination regarding civil lawsuits that were simply filed, in itself can fairly, legitimately, and reasonably be said to raise unfair prejudice in context. Consider that virtually anyone with the filing fee can commence a civil suit and thus open a "veritable Pandora's box of irresponsible gossip, innuendo and smear." Michelson, 335 U.S. at 480, 69 S.Ct. at 220. In the area of securities fraud in particular, there are broad bases for liability and it is quite easy to assert an amorphous and exaggerated claim. Unfounded suits are filed all the time.
 
 
 64
 Another danger in allowing such cross-examination is that the very form of such questions telegraphs purported facts to the jury. The jury "well might assume, as men of common sense, that the court would not allow the question if the fact were only fiction." Id. at 494, 69 S.Ct. at 227 (Rutledge, J. and Murphy, J., dissenting). This is a significant danger. In the instant case, for example, the proffered questions would insinuate to the jury that Peters in fact had liability for fraud and insider trading, or, at the very least, would leave the jury to guess that this had been the outcome. Because the allegations in the civil cases were unproven, the district court's decision to exclude them was proper.
 
 
 65
 Furthermore, even a negative response to such cross-examination would not remove the unfair prejudice that would result. In fact, the Eighth Circuit has noted:
 
 
 66
 The purpose of propounding the question in the first place is to test the knowledge and credibility of the witness. When he gives a negative answer to the question, with its imputation of truthfulness in view of the respected public official making the inquiry, the knowledge of the witness must certainly appear inadequate from the jury's point of view.... The negative response by a knowledgeable witness might be thought to suggest to the jury that the question contains no truth and hence removes any prejudice. We believe, however, that quite the opposite obtains. The negative response may actually be sought by the examiner to indicate that the witness is unknowledgeable and his credibility suspect so that the negative response heightens the truth imputed in the asking of the question by the respected public official.
 
 
 67
 Gross v. United States, 394 F.2d 216, 220-21 (8th Cir.1968). The Eighth Circuit's logic is certainly applicable to the present case.
 
 
 68
 In holding that the district court should have allowed the proposed cross-examination, the majority here interprets Michelson, supra, as saying "have you heard" questions must be admitted because they can be admitted. This is wrong. Michelson was decided prior to the adoption of the Federal Rules of Evidence, at a time when there was a more mechanistic application of evidentiary rules than now contemplated under Rule 403. More significantly, Michelson presented "have you heard" questions about an arrest, not a civil suit. These are entirely different situations. Even in a circumstance where there has been no conviction, an arrest, at the very least, ought to have been preceded by a determination of probable cause. See, e.g., Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The law, however, does not require any such showing as a condition of filing a civil suit.
 
 
 69
 The majority also states the opinion that any resulting prejudice can be reduced through the use of a limiting instruction. The decision about the efficacy of a limiting instruction, however, is a matter that is properly left to the discretion of the trial court. Consider the different circumstances of a trial court and an appellate court. The trial court observes jurors and is better situated to determine whether a limiting instruction would be effective. The trial court knows how many subtle issues a jury has to consider over the whole trial and how many limiting instructions it is capable of absorbing and applying. A trial court is in a far better position to determine whether the SEC attempted to try the instant case by insinuation and innuendo--this questioning being another straw on the pile. In contrast, the appellate court is faced only with a cold transcript. For these reasons, discretion has historically and wisely been vested with the trial judge. These are also the kinds of factors that persuaded the drafters of the Federal Rules of Evidence to promulgate a rule vesting the subtle balance in the trial court, and not the appellate court.
 
 
 70
 As an illustration of why I feel that a showing of clear abuse of discretion has not been presented in this case, consider Gross, supra, where the Eighth Circuit examined issues somewhat similar to the ones presented here. Gross was an appeal by two defendants convicted of fraud and obtaining money under false pretenses. At trial, the defendants called two character witnesses to testify as to their reputations in the community. On cross-examination, the first witness was asked if he "had heard" that a suit was filed against one of the defendants for purchasing money orders with insufficient fund checks and that a few days later judgment was entered against him. The second witness was asked if he "had heard" that the defendant had filed for bankruptcy and that a portion of the creditor claims listed against him was for unhonored checks. The witness was further asked if he "had heard" that an injunction had been issued prohibiting the defendant from practicing law. The court gave no instructions regarding such cross-examination and its relevance or the very limited purpose for which the jury might consider it. The court also made no effort, outside the presence of the jury, to ascertain whether there was a basis in truth for the questions. In addition, the prosecution failed to establish to the satisfaction of the trial court that such questions were in good faith.
 
 
 71
 In ruling that allowing such cross-examination was error, the court determined the case to be one of those rare circumstances where prejudicial abuse of discretion was clearly established for allowing the questions.[1] Gross, 394 F.2d at 220. The court noted that the record was barren of any showing supporting the basis for the cross-examination. Id. The trial judge took no safeguards to prevent the prosecution from " 'taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box.' " Id. (citations omitted). The court held that the cross-examination plus the failure to ascertain, out of the presence of the jury, a legitimate base for the inquiry, and the failure to warn or instruct the jury, was "clearly prejudicial." Id. at 222.
 
 
 72
 Although the facts of Gross are different in important ways from the facts of the case at bar, Gross, at the very least, demonstrates why the decision whether to permit this type of cross-examination should have been left to the informed discretion of the trial court. Specifically, Gross illustrates why the trial court, unlike the appellate court, is better situated to ascertain whether the SEC's proffered questions were legitimate and posed in good faith, after the inquiries and balancing called for by Gross. Additionally, Gross shows why the trial court can best assess whether a limiting instruction was necessary and would have been effective.
 
 
 73
 Finally, the Rule 403 process contains a balancing test. The majority states that the district court improperly performed this balancing because the judge misapprehended the relevance side of the balance. This is a distortion of what happened at trial. The trial judge considered the evidentiary value of the proposed cross-examination and was properly concerned with the inherent unfairness that would result to Peters if a trial by innuendo were permitted. This is obvious in his findings. According to the trial judge, the "questions all related to allegations made against [Peters] which are wholly distinct from the insider trading charges that ma[k]e up the present case. They remain mere allegations, with the underlying conduct unproven before this or any court." Memorandum and Order (October 9, 1990), in App. of SEC at 212-13. The trial judge also noted that the SEC was never prevented from examining Peters' witnesses on the factual matters upon which their opinions were based. The SEC was, however, properly denied an "unfettered right to inquire, in the guise of cross-examination, into matters wholly irrelevant to the present case, and which the witnesses were neither familiar with nor utilizing to form any part of their opinion." Id. at 206. I submit that the trial court did not abuse its discretion in so ruling.
 
 
 74
 For the foregoing reasons, the trial court had a reasonable basis for the exercise of its discretion to exclude the proposed cross-examination. Exclusion of such questions is "clearly within the zone of the trial court's discretion within Rule 403." Agristor, 865 F.2d at 1153. As I conclude that the district court's decision was neither arbitrary, capricious, whimsical, nor an overriding of the law by the exercise of manifestly unreasonable judgment or the result of partiality, prejudice, bias, or ill-will, I would not overrule its finding on this issue. The facts of this case simply do not demonstrate a clear abuse of discretion by the district court.
 
 
 
 *
 The Honorable Wayne E. Alley, District Judge of the United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 Section 14(e) provides, in relevant part:
 It shall be unlawful for any person ... to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer.... The [Securities and Exchange] Commission shall ... define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.
 15 U.S.C. § 78n(e).
 
 
 [2]
 Although Schreiber dealt with the word "manipulative," the Court noted that "it is a 'familiar principle of statutory construction that words grouped in a list should be given related meaning.' All three species of misconduct, i.e., 'fraudulent, deceptive, or manipulative,' listed by Congress [in Section 14(e) ] are directed at failures to disclose." Id. 472 U.S. at 8, 105 S.Ct. at 2642 (citation omitted)
 
 
 [3]
 A duty to disclose can arise in several ways. Such a duty may arise as a result of the fiduciary relationship that an insider has with stockholders. See Chiarella, 445 U.S. at 228, 100 S.Ct. at 1114. Alternatively, where an insider reveals information to a tippee in breach of the insider's fiduciary duty and the tippee knows or should know that there has been a breach, the tippee assumes a duty to disclose, apparently in the nature of a constructive trustee. See Dirks v. SEC, 463 U.S. 646, 660 & n. 20, 103 S.Ct. 3255, 3265 & n. 20, 77 L.Ed.2d 911 (1983). Some courts have held that an employee owes a duty to disclose material, nonpublic information before trading if he misappropriates the information from his employer--irrespective of whether the employer was an insider or otherwise owed a duty to shareholders. Compare United States v. Carpenter, 791 F.2d 1024, 1034 (2d Cir.1986) (employer was a financial newspaper), affirmed by equally divided Court, 484 U.S. 19, 24, 108 S.Ct. 316, 319, 98 L.Ed.2d 275 (1987) with SEC v. Materia, 745 F.2d 197, 203 (2d Cir.1984) (employer was a financial printer whose clients were public corporations involved in tender offers), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985). Our holding does not require us to address the validity of the misapplication theory of duty
 
 
 [4]
 We have serious doubts about this assumption that Section 14(e) was intended to do nothing more than to proscribe conduct already proscribed by Section 10(b) and Rule 10b-5. See Schreiber, 472 U.S. at 10-11, 105 S.Ct. at 2464 (Section 14(e) "require[s] disclosure more explicitly addressed to the tender offer context than that required by § 10(b).") (emphasis added). But see Panter v. Marshall Field & Co., 646 F.2d 271, 282 (7th Cir.) (Sections 14(e) and 10(b) "are coextensive in their antifraud provisions.... They are therefore construed in pari materia by courts."), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). Regardless, the SEC is given broader powers to take prophylactic measures to prevent such fraud in a tender offer setting, and we uphold Rule 14e-3 as an exercise of such prophylactic power
 
 
 [5]
 Peters repeatedly refused to concede that he owed a fiduciary duty to West with regard to this information. See Supp.App. of SEC at 1 (Court speaking to Peters' counsel after motion for directed verdict: "The issue of fiduciary relation is for the jury under [Instruction] 23 because you to this moment will not admit that Mr. Peters was, in fact, in confidence with Mr. West. I should think I ought to be able to tell this jury that issue is agreed, but it's not. You want it for a jury question and it is a jury question."); SEC v. Peters, 735 F.Supp. 1505, 1520 (D.Kan.1990) (Peters argued, in motion for summary judgment, that "there was no fiduciary obligation to the partnership to keep confidential information relating to ERG")
 
 
 [6]
 We note, moreover, that even if the erroneous Rule 14e-3 instruction were not prejudicial, we would remand for a new trial nevertheless because other trial errors, discussed below, were clearly prejudicial
 
 
 [7]
 The testimony was as follows:
 Q [by Peters' counsel]: In the 23 years that you ... worked at the bank, Mr. Peters, did ... anybody accuse you or make any claim against you for having breached any confidence of any customer or of the bank?
 A [by Peters]: No, never.
 App. of SEC at 523.
 
 
 [8]
 We do not mean to suggest that a witness should conclude that a party's character is bad based solely upon prior, unproven allegations of fraud. However, it is certainly relevant to inquire into why such a witness has chosen to disregard such allegations
 
 
 [9]
 The district court's distinction between opinion and reputation character evidence is addressed only to the court's refusal to permit the SEC's proposed cross-examination of Peters' character witnesses. The court does not purport to justify its refusal to permit the SEC's proposed cross-examination of Peters himself on this ground. Indeed, the court's rationale for distinguishing opinion from reputation evidence--that an opinion witness could testify only as to matters about which he had first-hand knowledge--would not apply to Peters, who clearly had first-hand knowledge of the allegations against him. Thus, even if the distinction were proper, which it is not, it would not permit exclusion of the SEC's proposed cross-examination of Peters. This exclusion could only be justified under Federal Rule of Evidence 403, which we discuss below
 
 
 [1]
 The court noted that the "exercise of the right to test the credibility of character witness by such means is fraught with great danger. Unless circumscribed by rules of fairness and grounded in demonstrated good faith on the part of the prosecution, the result could be most prejudicial to the defendant and make for a miscarriage of justice." Gross, 394 F.2d at 219